Christopher R. Robert, Executor, etc., Respondent, *v.* Jane R. Corning et al., Appellants.

The creation of a trust in real estate does not *ipso facto* suspend the power of alienation, it is only suspended where a trust term is created either expressly or by implication, during the existence of which a sale by the trustee would be in contravention of the trust.

Where the trustee is empowered to sell without restriction as to time, that being left to his discretion, he to receive, pending the sale, the rents and profits for the benefit of beneficiaries, the power of alienation is not suspended, although a sale be postponed by the non-action of the trustee. The fact that the interest of the beneficiaries is inalienable by statute during the existence of the trust does not suspend the power of alienation.

The statute of perpetuities is pointed only to the power of alienation, not to the time of its actual exercise, and there can be no unlawful perpetuity unless the power of sale is suspended.

The mere fact that it may be the duty of executors, in the exercise of their discretion, to postpone a sale to await a more favorable market, does not constitute such a restraint as suspends the power of alienation within the statute.

So also said statute is not violated by directions as to sales which require the giving of notice or the doing of other preliminary acts, which may involve some delay in the actual conversion.

*It seems* that if the limitation of the interests in the proceeds is illegal, the power of sale to accomplish that purpose may be void.

The will of R. directed his executors to sell and dispose of his residuary estate ; that portion of the real estate situate in this State to be sold at public sale in the city of New York after three weeks' published notice, the other real estate in such places and manner as the executors should deem best. After directions as to the disposition of the proceeds, there followed this clause : " In view of the present great depression in real estate, it is my will that my executors  * * * *  exercise their discretion as to the time to sell the same not longer then three years after my decease." The rents, income and profits up to final distribution, the executors were directed to divide semi-annually "among those to whom the bequests are made" in certain proportions. In an action to obtain a judicial construction of the will, *held,* that whether the executors took a trust estate or were simply donees of a trust power, there was no suspension of the power of alienation, as they could, at any time after the testator's death, have conveyed an absolute fee in possession ; that neither the direction as to notice, nor the discretion as to the sale involved a suspension of the power of alienation within the meaning of said statute ; also, that by the will there was an absolute conversion of the real estate into personalty as of the time of the testator's death.

The executors were directed, after disposing of said residuary estate, and deducting from the proceeds expenses and charges, and a legacy given to the testator's wife, to divide the remainder into fifty equal parts, to pay over twelve of such parts to the testator's son C., if then surviving ; in case of his death prior to such distribution, then to his lawful issue. Twenty-eight of said parts were given in similar language to three other children, and the executors were directed to pay the remaining ten shares to an incorporated college. The college was restricted to the use

of the income of its portion, and in case of its discontinuance, its trustees were directed to apply the fund to certain religious purposes specified. *Held,* that the restriction did not create a perpetuity, and if the provision in case of discontinuance was void, it resulted simply in confirming an absolute title in the corporation.

In case of the death of any child before the testator, the will gave "such legacies, estate, share or proportion of the one so dying unto his, her or their lawful issue, such issue to take the estate or share his, her or their parent would have been entitled to if living." *Held,* that the intent of the testator was to give to his children the absolute title to their respective shares, subject to a limitation over in case of death before distribution, and that the ultimate vesting could in no event be postponed longer than the life of the parent.

The will directed that all charges appearing on the testator's books of account against any of the said legatees should be considered as part of his residuary estate, and the executors were directed to deduct the amount from the share of said legatee. *Held* valid.

(Argued April 20, 1882 ; decided May 30, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made December 18, 1880, which affirmed a judgment, entered upon a decision of the court on trial at Special Term. (Reported below, 23 Hun, 299.)

This action was brought by plaintiff, as executor of the will of Christopher R. Robert, deceased, to obtain a judicial construction of said will, and a decision as to the validity of certain provisions thereof.

The will, after various specific devises and bequests, among them a bequest to the testator's wife of $30,000, contained these clauses :

"*Fourthly.* All the rest, residue and remainder of my estate, real and personal, whatsoever or wheresoever, as well that I now have as that which I may hereafter acquire and die possessed of or entitled to (except such as is herein otherwise disposed of), I order and direct my executors hereinafter named, or such of them as shall qualify and act, the survivors and survivor of them, to sell and dispose of as follows, namely: such portion of the said real estate as may be in the State of New York to be sold at public sale in the city of New York, notice

thereof having first been given of the time and place of sale for three successive weeks in four of the daily newspapers of the said city, giving a full proper description of the said real estate ; and the real estate in other places to be sold at such places and in such manner as my said executors deem best, and after disposing of my said real and personal property and deducting from the proceeds thereof all necessary expenses and charges, also the thirty thousand dollars bequeathed my wife as before mentioned, to divide the remainder into fifty equal parts ; and if my son, Christopher R. Robert, junior, be then surviving, to pay over to him twelve equal parts thereof, but, in case of his death prior to such distribution, upon such distribution to pay over the said twelve parts to his lawful issue in equal portions, share and share alike.

" And if my son Frederick Robert be living at the time of such distribution to pay over to him eleven of said equal parts, but, in case of his death prior to such distribution, upon such distribution to pay over the said eleven parts to his lawful issue in equal portions, share and share alike.

" And if my son Howell W. Robert be living at the time of such distribution to pay over to him twelve of the said equal parts, but, in case of his death prior to such distribution, upon such distribution to pay over the said twelve parts to his lawful issue in equal portions, share and share alike.

" And if my daughter Jane R. Corning be living at the time of such distribution to pay over to her five of the said equal parts, but, in case of her death prior to such distribution, upon such distribution to pay over the said five parts to her lawful issue in equal portions, share and share alike.

" And upon such division to pay over to ' The trustees of Robert College of Constantinople ' ten of such equal shares, which, with the other bequests herein made to the said trustees of said college, are for the endowment fund of the said college, and the money derived from the said bequests is to be invested in bond and mortgage on improved productive real property in fee-simple, in the city of New York or Brooklyn, worth double the amount loaned at a low valuation, — the income

only to be used for the general uses and purposes of the said college.

"In case the said college shall be discontinued, then I will that the said bequests, as well as any other bequests herein made to the said college, shall be applied by the said trustees of said college in such manner as they may deem best for the general purposes of Evangelical and Protestant education among any of the nationalities of the Turkish empire.

"*Fifthly.* If either of my said children shall die before me, leaving lawful issue, then I give, devise and bequeath such legacies, estate, share or proportion of the one so dying unto his, her or their lawful issue; such issue to take the estate or share his, her, or their parent would have been entitled to if living.

"*Item.* If either of my said children should die before me without leaving lawful issue, then I give, devise and bequeath the estate, legacies, share and proportion of my estate hereby given to the one so dying unto the survivors or survivor of them, my said children and the issue of such of them as shall have previously died leaving lawful issue, such issue to take the part or share his, her or their parent would have been entitled to if living.

"*Sixthly.* All moneys or indebtedness which shall appear upon any inventory, or ledger, or books of account kept by me or under my direction, charged as due to me from any or either of my said children or Robert College of Constantinople, during my life-time, and as an outstanding or unsettled account at the time of my decease, whether with or without security, shall be considered as forming part of my estate mentioned or referred to in the fourth article of this my will, and a discharge from such indebtedness by my executors shall be deemed and taken as an equivalent to an equal amount paid such college, child or children, on account of its, his, her or their share and portion under this my will.

"And my executors are hereby directed to deduct the amount of such indebtedness from such respective share or portion, but no interest is to be charged upon or added to any such indebt-

edness except in case a bond, note, or other obligation securing such indebtedness be found among my assets, upon which said bond, note or obligation interest has been paid or charged, in which case the said indebtedness shall continue to be charged with interest."

*Ch. Francis Stone* for appellant Jane R. Corning. All the dispositions of the residuary estate are void for remoteness. (*Harris* v. *Clark,* 7 N. Y. 261; 1 R. S. 729, § 56; *Knox* v. *Jones,* 47 N. Y. 396; *Tobias* v. *Ketchum,* 32 id. 329; *Vernon* v. *Vernon,* 53 id. 351; *Moss* v. *Moss,* 35 id. 60; *Hawley* v. *James,* 16 Wend. 175; 1 R. S. 730, § 63; id. 735, § 103.) The future estates in the residue given to children and their issue are inalienable until the distribution, because, whether the parents or their issue shall take, must remain uncertain during the trust term. (*Knight* v. *Knight,* 2 Sim. & Stu. 490; *Craig* v. *Leslie,* 3 Wheat. 586; *Hetzel* v. *Barber,* 59 N. Y. 11; *Garvey* v. *McDavitt,* 72 id. 562; *Trower* v. *Knightly,* 6 Madd. 134; *Striker* v. *Mott,* 28 N. Y. 92, 93; 1 R. S. 724, § 25; 3 id. [2d ed.] 573, Rev. Notes; *Doe* v. *Scudamore,* 2 Bos. & Pul. 289; 16 Wend. 238; 20 id. 566, 567; *Hawley* v. *James,* 16 id. 136.) There are no persons in being who can convey a fee-simple absolute in possession before the distribution. (*Goldschmid* v. *Goldschmid,* 1 T. & R. 454, Poste Note B.) All the limitations of the will in respect to the testator's residuary personal property are void in law. (1 R. S. 773, § 2; id. 730, § 63; id. 773, § 1; *Williams* v. *Thorn,* 70 N. Y. 270; *Graff* v. *Bonnett,* 31 id. 9; *Manice* v. *Manice,* 43 id. 382.) The reserved power to alter a part of the will by proxy, and by unattested entries of indebtedness is contrary to the statute. (2 R. S. [1st ed.] 64, § 42; *Langdon* v. *Astor,* 16 N. Y. 26; 1 Redfield on Wills, 278, § 22, subd. 13; *Thayer* v. *Wellington,* 9 Allen, 283; *Habergham* v. *Vincent,* 2 Vesey, Jr., 228; 3 Duer, 582–4.) The Tennessee lands cannot be taken by the college under any power granted by this State. (*Thompson* v. *Quimby,* 2 Bradf. 459.)

*John Clinton Gray* for appellant Frederick Robert. Authority to sell coupled with provisions for payment of rents

and profits to another creates a trust estate in the executor. (*Vernon* v. *Vernon*, 52 N. Y. 351; *Tobias* v. *Ketcham*, 32 id. 319, 328; *Brewster* v. *Striker*, 2 Comst. 19; *Smith* v. *Schultz*, 68 N. Y. 41; *Garvey* v. *McDevitt*, 72 id. 562; *Morse* v. *Morse*, N. Y. Ct. of App., April 19, 1881; 2 Comst. 297; 2 W. Saunders' 11; R. S., part 2, chap. 1, tit. 2, art. 1, § 55.) An illegal suspension of the power of alienation existed. (R. S., art. 1, tit. 2, §§ 14, 15; *Hawley* v. *James*, 16 Wend. 134, 171, 172; *Hone's Executors* v. *Van Schaick*, 20 Wend. 566; *Thompson* v. *Carmichael's Executors*, 1 Sandf. Ch. 387; *Schettler* v. *Smith*, 41 N. Y. 328, 334; Lewis on Perpetuities, 170; *Moore* v. *Moore*, 47 Barb. 257; *Ibbettson* v. *Ibbettson*, 10 Sim. 495.) The absolute ownership and power of alienation of the estate are suspended by the creation of a future estate where the persons in whom it will ultimately vest cannot be known; and as the persons in whom it will vest may not be in existence, no person can convey an absolute fee. (*Leonard* v. *Burr*, 18 N. Y. 107; 1 R. S. 728, § 55; 730, §§ 63, 65; *Hawley* v. *James*, 15 Wend. 61; *Hone's Executors* v. *Van Schaick*, 20 Wend. 564.) The beneficiaries cannot alienate their interests in a trust. (2 R. S. [Banks' 6th ed.] 1110, § 76 [63].) Nor can the power of sale be waived by all the legatees, and if not by all, then the sale must take place if the provision is valid. (*Trower* v. *Kingsley*, 6 Mad. 134; *Garvey* v. *McDevitt*, 72 N. Y. 562; *Hetzel* v. *Barbour*, 69 id. 1; *Jennings* v. *Jennings*, 7 id. 547; *Brewer* v. *Brewer*, 11 Hun, 147; 72 N. Y. 603.) If the trust estate attempted to be created is illegal, then the provision as to the residuary estate fails as an entirety, and the estate descends to the heirs at law. (*Chapman* v. *Brown*, 3 Barb. 634; *Lovelace* v. *Blight*, Cowp. 355; *Chrystie* v. *Phyfe*, 19 N. Y. 344; *Post* v. *Hover*, 33 id. 593.) To entitle the trustees of Robert College to take any part of this estate, they must bring themselves within the protection of the statute, and it must appear that some real or personal estate is given to them in a mode, and of a description which the law authorizes. (2 R. S. [Banks' 6th ed.] 440; *Downing* v. *Marshall*, 23 N. Y. 366, 388; *Incorporated Church Build-*

*ing Society* v. *Coles*, DeG., M. & G. 324; *Brook* v. *Badley*, L. R., Ch. App. 672.) The sixth clause is invalid, because the testator attempts virtually to incorporate into the will various kinds of existing, but unattached papers and books, whose contents either must have been unknown to any one but the testator, or might perhaps not have been known to him. (*Langdon* v. *Astor*, 16 N. Y. 26; *Thompson* v. *Quimby*, 2 Bradf. 49; *Thayer* v. *Wellington*, 9 Allen, 291; *Habergham* v. *Vincent*, 2 Ves. Jr. 228; 3 R. S. [Banks' 6th ed.] 63, § 40 [42].)

*A. J. Vanderpoel* for plaintiff, respondent. The provisions of the will did not create a trust estate in the executors. (*Post* v. *Hover*, 33 N. Y. 593, 599; *Heermans* v. *Robertson*, 64 id. 332; 2 R. S. 1109, §§ 69, 71, 72.) The division of the estate was merely a mechanical act, supposed to take place as soon as sale could be made. The interests were all vested. (*Clason* v. *Clason*, 18 Wend. 369; *Manice* v. *Manice*, 43 N. Y. 303.) If the ninth clause contains a direction to accumulate each share until each child attains twenty-five years of age, it is only invalid for the period over twenty-one years. (2 R. S. [6th ed.] 1104, § 38; 1 R. S. 774, orig. p.; *Williams* v. *Williams*, 4 Seld. 825.) Even if the devise and bequest to Robert College, or any other of the special bequests or provisions are invalid, the rest of the will is not disturbed. (*Knox* v. *Jones*, 47 N. Y. 390; *Adams* v. *Perry*, 43 id. 501; *Manice* v. *Manice*, id. 303; *Williams* v. *Conrad*, 30 Barb. 524; *DeKay* v. *Irving*, 5 Den. 646; *Post* v. *Hover*, 33 N. Y. 593; *Harrison* v. *Harrison*, 36 id. 543; *Savage* v. *Burnham*, 17 id. 561.)

*Thomas G. Shearman* for the trustees of Robert College, respondents. There being no express devise of the testator's real property, if the residuary clause stood alone the title to the real property would vest in the heirs, subject to the exercise of the executors' power of sale. (*Moncrief* v. *Ross*, 50 N. Y. 431, 435; *Heermans* v. *Robertson*, 64 id. 332, 346; *Hutchings* v.

*Baldwin,* 7 Bosw. 236 ; *re McLaughlin,* 2 Bradf. 107 ; *Catton* v. *Taylor,* 42 Barb. 578 ; *Vernon* v. *Vernon,* 53 N. Y. 351 ; *Knox* v. *Jones,* 47 id. 346 ; *Hone* v. *Van Schaick,* 20 Wend. 564 ; *Tobias* v. *Ketchum,* 23 N. Y. 319 ; *Brewster* v. *Striker,* 2 id. 19 ; *Morse* v. *Morse,* 85 id. 53.)   The executors took no title to the real estate, but held only a power in trust.   (*Prentice* v. *Janssen,* 79 N. Y. 478 ; affirming *S. C.,* 14 Hun, 548 ; *Manice* v. *Manice,* 43 id. 303, 364 ; *DeKay* v. *Irving,* 5 Den. 649, 654 ; *Post* v. *Hover,* 33 N. Y. 593, 599, 601 ; *Martin* v. *Martin,* 43 Barb. 172 ; see, also, *Jennings* v. *Conboy,* 73 N. Y. 230, 236 ; *Manice* v. *Manice,* 43 id. 303, 362 ; *Tucker* v. *Tucker,* 5 id. 408.)   The trust estate created by the will, if void as a trust, may be valid as a power.   (*Downing* v. *Marshall,* 23 N. Y. 366 ; *Manice* v. *Manice,* 43 id. 303, 304 ; *Crittenden* v. *Fairchild,* 41 id. 289, 292 ; *New York Dry Dock Co.* v. *Stillman,* 30 id. 178, 193 ; *DeKay* v. *Irving,* 5 Den. 649 ; 1 R. S. 729, § 58.)   The discretion given the executors to delay the sale of the real estate for three years was not a suspension of the power of alienation for an unlawful period.   (*Van Vechten* v. *Van Veghten,* 8 Paige, 104, 124 ; *Roper's Trusts,* 11 Ch. Div. 272 ; *Davey* v. *Ward,* 7 id. 754 ; *Mortimer* v. *Watts,* 14 Beav. 616 ; *Webb* v. *Shaftesbury,* 7 Ves. 480 ; *Walker* v. *Shore,* 19 id. 387, 391 ; *Ireland* v. *Ireland,* 84 N. Y. 321 ; *Beaufort* v. *Berty,* 1 P. Wms. 703 ; see *Manice* v. *Manice,* 43 N. Y. 303, 365 ; *Heermans* v. *Robertson,* 64 id. 332, 339 ; affirming 5 T. & C. 596.)   The objection to the clause requiring three weeks' notice of sale was well taken. (2 R. S. 109, § 74 ; 1 id. 532, §§ 34, 35 ; 2 id. 368, § 94 ; Code Civ. Pro., § 1434 ; 2 R. S. 104, § 25 ; Code of Civ. Pro., §§ 2772, 1434.)   If the requirement of three weeks' notice of sale could possibly be held to work an unlawful suspension of alienation, it could be disregarded by the executors.   (*Minuse* v. *Cox,* 5 Johns. Ch. 441, 447.)   The power of alienation is not suspended within the meaning of the statute, so long as there is any number of persons in being by whose concurrent consent a good title could be conveyed.   (1 R. S. 723, § 14 ; *Everitt*

v. *Everitt,* 29 N. Y. 39, 96; *Gott* v. *Cook,* 7 Paige, 521, 543;
*Greenleaf* v. *Queen,* 1 Pet. 138; *Hetzell* v. *Barber,* 69 N. Y.
1, 11; *Craig* v. *Leslie,* 3 Wheat. 577; *Smith* v. *Starr,* 3
Whart. 62, 65; *Burr* v. *Line,* 1 id. 252, 265; *Stuck* v.
*Mackey,* 4 W. & S. 196; *Mandelbaum* v. *McDonnell,* 29
Mich. 78; *Seely* v. *Jago,* 1 P. Wms. 389; *Crabtree* v. *Bramble,*
3 Atk. 680; 1 Story's Eq. Jur., § 793; 43 N. Y. 303, 388;
*Post* v. *Hover,* 33 id. 593; *Minuse* v. *Cox,* 5 Johns. Ch. 441,
447.) The discretion of a trustee can be controlled by the
court, and will be so controlled when necessary to avoid
the frustration of the testator's intention. (*Heermans* v.
*Robertson,* 64 N. Y. 332, 339; *Walker* v. *Short,* 19
Vesey, 387; *Hawkins* v. *Chappel,* 1 Ark. 621; *Manice* v.
*Manice,* 43 N. Y. 303, 368, 369; *DeKay* v. *Irving,* 5 Denio,
649; *Minors* v. *Battisson,* 1 App. Cas. 428; *Martin* v.
*Martin,* L. R., 2 Eq. 404; *Birds* v. *Ackey,* 24 Beav. 615;
*Clason* v. *Clason,* 18 Wend. 369; *Oxley* v. *Lane,* 35 N. Y.
340, 349; *Savage* v. *Burnham,* 17 id. 561, 576.) A bequest
to any benevolent or religious corporation, with the di-
rection that the income only shall be used for the pur-
poses of the corporation, is perfectly valid. (*Wetmore* v.
*Parker,* 52 N. Y. 450; *Williams* v. *Williams,* 8 id. 525;
43 id. 387.) The objection that the devise of real estate in
Tennessee to the trustees of Robert College is void, and in the
absence of local statutes authorizing the corporation to take
can only be raised by proof that the trustees of Robert College,
are not authorized to take under the Tennessee law. (*Knox* v.
*Jones,* 47 N. Y. 389, 395.) The provision of the will direct-
ing legatees to be charged with moneys or indebtedness, appear-
ing by the testator's books to be due him from them, has no ef-
fect adverse to the will. (*Langdon* v. *Astor,* 16 N. Y. 9, 25, 31;
*Gilman* v. *Gilman,* 6 N. Y. Sup. Ct. 211; affirmed, 63 N. Y. 41;
*Lawrence* v. *Lindsay,* 68 id. 108; *Marsh* v. *Brown,* 18 Hun,
319; *Thompson* v. *Quimby,* 2 Bradf. 449, 459. See *Manice* v.
*Manice,* 43 N. Y. 303, 384; *Oxley* v. *Lane,* 35 id. 340, 348;
*DeKay* v. *Irving,* 5 Denio, 649; *Jennings* v. *Conboy,* 73 N.
Y. 230, 236; *Manice* v. *Manice,* 43 id. 303, 362; *DuBois* v.

*Ray,* 35 id. 162; *Post* v. *Hover,* 33 id. 593; *Bates* v. *Hillman,* 43 Barb. 645.)

ANDREWS, Ch. J. By section 15, of the article of the Revised Statutes relating to the creation and division of estates in land (1 R. S. 723), the absolute power of alienation cannot be suspended by any limitation or condition whatever, for a longer period, than during the continuance of two lives, in being at the creation of the estate, except in a single case, not material to the present inquiry. What shall constitute such suspension is declared in section 14. Such power of alienation (the section declares), is suspended, when there are no persons in being, by whom an absolute fee in possession can be conveyed. The rule declared in this section, constitutes, under our statute, the sole test of an unlawful perpetuity. Construing sections 14, and 15, together, it is manifest, that where there are persons in being at the creation of an estate, capable of conveying an immediate and absolute fee in possession, there is no suspension of the power of alienation, and no question under the statute of perpetuities arises. But the statute does not prohibit all limitations of estates, suspending the power of alienation. It permits them, within the restriction of two designated lives in being at their creation, and a minority. If the suspension of alienation is effected by the creation of future contingent estates, the validity of the limitation depends upon the question, whether the contingency upon which the estates depend, must happen within the prescribed period. If the suspension is effected by the creation of an express trust to receive the rents and profits of land, under section 55 of the statute of uses and trusts (1 R. S. 728), the lawfulness of the suspension, depends upon the question, whether the trust term is, in respect of duration, lawfully constituted. But the mere creation of a trust, does not, *ipso facto*, suspend the power of alienation. It is only suspended by such a trust, where a trust-term is created, either expressly or by implication, during the existence of which, a sale by the trustee, would be in contravention of the trust. Where the trustee is empowered to sell the land, without restriction as to time, the power of alienation is not sus-

pended, although the alienation in fact may be postponed, by the non-action of the trustee, or, in consequence of a discretion reposed in him, by the creator of the trust. The statute of perpetuities is pointed only to the suspension of the *power* of alienation, and not at all to the time of its actual exercise, and when a trust for sale and distribution is made, without restriction as to time, and the trustees are empowered to receive the rents and profits, pending the sale for the benefit of beneficiaries, the fact that the interest of the beneficiaries is inalienable by statute, during the existence of the trust, does not suspend the power of alienation, for the reason, that the trustees are persons in being, who can, at any time, convey an absolute fee in possession. The only question which, in such a case, can arise under the statute of perpetuities, is, whether the trusts in respect to the converted fund, are legal or operate to suspend the absolute ownership of the fund, beyond the period allowed by law. If the limitation of the interests in the proceeds, is illegal, the consequence might follow, that the power of sale given to accomplish the illegal purposes, would be void. (*Van Vechten* v. *Van Veghten,* 8 Paige, 124.)

It is strenuously insisted by the counsel for the respondent, that the testator intended the will in question to vest the legal title to his residuary real estate in the executors, and that this is the legal effect of the power of sale conferred by the fourth section, in connection with the clause in the eighth section, whereby he directs his executors to divide all the "rents, income or profits from any estate until it is finally distributed semi-annually among those to whom the bequests are made, in the proportion that the amount of the said bequest bears to the said net income or profit." There is no express devise to the executors of the legal estate; but the direction that they shall semi-annually divide the net income and profits, until the final distribution among the several distributees carries with it, by natural implication, an authority to receive the rents, income and profits meanwhile, to enable the executors to perform the duty of dividing them among the several beneficiaries. The testator contemplated that the real estate might not

be sold for some time after his death, for by the first clause in the eighth section, he authorizes the executors " in view of the present great depression in real estate," to postpone the sale in their discretion, but for a period not longer than three years after his decease. The presence of the legal estate in the trustees pending a sale, if not absolutely necessary to enable them to perform the duty imposed upon them, to divide the net income and profits, is a convenient and natural arrangement, and the vesting of the legal estate in the trustees by implication, would not, as we construe the will, defeat or disturb any of its provisions, but would be in harmony with its scheme and dispositions. The general rule, that to constitute a devise of an estate by implication, the intention must be clear, is well settled. (Jarman on Wills, 465.) The rule has especial application, and is most stringently applied, where a beneficial devise by implication is claimed, which would divest the title of the heir if the claim should be admitted. This rule has also been frequently applied in cases involving questions under our statute of uses and trusts, where a trust estate, if held to result from the language and dispositions of a will, would render it illegal and void. In such cases the courts, for the purpose of sustaining the will, construe an authority and duty conferred or imposed upon executors, where it is possible to do so, as a mere power in the trust, although the duty imposed, or the authority conferred, may require that the executors shall have control, possession, and actual management of the estate. (*Downing* v. *Marshall*, 23 N. Y. 366 ; *Post* v. *Hover*, 33 id. 593 ; *Tucker* v. *Tucker*, 5 id. 408.) But there are many authorities tending to sustain the proposition, that a trust will be implied in executors, when the duties imposed are active, and render the possession of the legal estate in the executors, convenient and reasonably necessary, although it may not be absolutely essential to accomplish the purposes of the will, and when such implication would not defeat, but would sustain the dispositions of the will. (*Craig* v. *Craig*, 3 Barb. Ch. 76 ; *Bradley* v. *Amidon*, 10 Paige, 235 ; *Tobias* v. *Ketchum*, 32 N. Y. 329 ; *Vernon* v. *Vernon*, 53 id. 351 ;

*Morse* v. *Morse*, 85 id. 53. See, also, *Brewster* v. *Striker*, 2 id. 19.)

But it is unnecessary to determine whether the executors took under the will in question, the legal title to the real estate, for in the view we take of the will, there was no suspension of the power of alienation, whether the executors took a trust estate, or were simply donees of a trust power. In either character, whether as trustees or as executors only, they could at any time from the moment of the testator's death, have conveyed an absolute fee in possession. The suspension of the power of alienation of the real estate is supposed to result from the direction of the fourth section of the will, that the sale of the testator's real estate, situate in the State of New York, should be made by the executors at public sale in the city of New York, after three weeks' notice by publication in four daily newspapers of the city, and also from the provision in the eighth section that "in view of the present great depression in real estate," the executors might exercise a discretion as to the time of sale not longer than three years after the testator's death. The direction that the real estate in this State, should be sold at public sale, on three weeks' notice, was a prudential arrangement to insure a fair sale, and prevent a sacrifice of the property, and in no proper sense suspended the power of alienation. The direction for notice was a mere incident to the conversion of the property, and the requirement was both usual and reasonable. The statute of perpetuities is not violated by directions which may involve some delay in the actual conversion or division of property, arising from the necessity of giving notice, or doing other preliminary acts. (*Manice* v. *Manice*, 43 N. Y. 303.) Such delays are not within the reason or policy of the statute. The statute was aimed against the creation of inalienable trust estates, or contingent limitations, postponing the vesting of titles beyond the prescribed period. The act of 1837 (Chap. 460, § 43), provides that sales of real estate made by executors in pursuance of an authority given by any last will, unless otherwise directed therein, may

be public or private. A public sale implies prior notice. The direction that the sale should be public was clearly valid, and it can make no difference upon the point now in question, whether the length of the notice (if reasonable) is prescribed by the testator or is left to the judgment of the executors.

We are also of the opinion that the discretion vested in the executors to delay the sale of the real estate not exceeding three years, did not create a trust term for any period of time and involved no suspension of the power of alienation. The discretion, as the testator declares, was given in view of the depression in real estate. In the absence of any provision in the will, the executors would have a reasonable discretion as to the time of sale, to be exercised in view of all the circumstances. The *power* of sale was not fettered by the discretion given by the will. The executors could sell and convey the land at any time, by a perfect title. It may be conceded that they were bound to exercise their discretion in good faith, and to delay the sale if the interests of the beneficiaries seemed to require it. But there can be no unlawful perpetuity unless the *power* of sale is suspended, and the mere fact that it might be the duty of the executors, in the exercise of their discretion, to postpone the sale to await a more favorable market, does not, we think, constitute such a restraint as suspends the power of alienation within the statute.

The remaining question on this branch of the case relates to the limitation of interests in the proceeds of the sale to be made by the executors. There was, by the will, an absolute conversion of the real estate into personalty, as of the time of the testator's death, and the several distributees took their interests as money and not as land. (*Kane* v. *Gott*, 24 Wend. 641; *Stagg* v. *Jackson*, 1 N. Y. 206.) Were these interests so limited as to vest the absolute ownership within or at the expiration of not more than two lives in being at the death of the testator? (1 R. S. 773.) The executors, in the fourth section of the will, are directed, after selling the real and personal property, and deducting expenses and charges and $30,000 for the testator's wife, to divide

the remainder into fifty equal parts, "and if my son Chris-topher R. Robert, junior, be then surviving, to pay over to him twelve equal parts thereof, but, in case of his death prior to such distribution, upon such distribution to pay over the said twelve parts to his lawful issue in equal portions, share and share alike." The testator, in similar language, gives to his son Frederick, eleven shares, to his son Howell, twelve shares, and to his daughter Jane R. Corning, five shares, and the executors are directed, on the division, to pay the remain-ing ten shares to "the trustees of Robert College of Constan-tinople." We are of opinion that the legacies to the sons and daughter of the testator, and to Robert College, vested in the respective legatees immediately on the death of the testator. It is true that there is in the fifth section of the will, no gift to the several legatees, except the gift implied in the direction to the executors upon the distribution, to pay over the shares respectively, and by a general rule of construction, where there is no direct gift, and words of condition such as *if* or *upon* are used, in connection with a direction for payment at a future time, the time is regarded as of the substance of the gift, and the legacy is contingent and not vested. But the question is generally one of intention, and the whole will is to be consid-ered in determining the intention of the testator. The inten-tion of the testator in respect to the shares of the sons and daughter, appears to have been to give them the absolute title to their respective shares, subject to a limitation over to their issue, in case of their death before the period of distribution. The postponement of the distribution, which was contemplated, was for the convenience of the estate to enable the executors advantageously to convert the property, and the rents, income and profits which might accrue between the time of the testa-tor's death and the time of distribution were given to the several legatees to be paid semi-annually, in proportion to their interests in the *corpus* of the fund. These circumstances are regarded as rebutting the presumption against the vesting of legacies, arising from the fact that there is no direct gift, but only a direction to pay over at a future time. The postpone-

ment of the payment, where it is made for the convenience of the estate, is consistent with the vesting of the legacies, and the gift of the intermediate income, indicates an intention to vest the *corpus* from which the income is to be derived. (*Packham* v. *Gregory*, 4 Hare, 396 ; *Hanson* v. *Graham*, 6 Ves. 239 ; *Davies* v. *Fisher*, 5 Beav. 201 ; 1 Jar. 843 ; 1 Rop. on Leg. 573 ; 2 Wms. on Exrs. 1243.) It is also to be observed that in the fifth section of the will, which provides for the contingency of the death of a child without issue, before the death of the testator, the testator designates the interest which is to go to the survivors, as "the share or proportion of my estate hereby given to the one so dying." The limitation over to the issue of any child dying before the distribution, was the limitation of a future contingent estate to such issue, but the ultimate vesting of the several legacies given primarily to the sons and daughter, could in no event be postponed longer than the life of the parent. On the death of any son or daughter before distribution, leaving issue, the share of the one so dying would immediately vest in such issue, and if there was no issue, it would go to his or her next of kin. (See *Norris* v. *Beyea*, 13 N. Y. 273 ; *Trustees, etc.*, v. *Kellogg*, 16 id. 83.) The legacy to Robert College was also vested, and we perceive no ground upon which its validity can be questioned. It is not claimed that the corporation was not capable of taking the legacy, and the fact that the testator restricted the college to the use of the income was consistent with the purpose of donations to such corporations, and did not create a perpetuity. (*Wetmore* v. *Parker*, 52 N. Y. 450.) The provision that if the college should be discontinued, the trustees should apply the fund for purposes of Evangelical and Protestant education among the nationalities of the Turkish empire, if held to be void as a limitation over for the benefit of unascertained beneficiaries, or for other reason, would simply result in confirming an absolute title to the fund in the corporation.

We think the sixth section of the will is valid, within the rule that a testator may direct that the amount of a legacy once

completely fixed by the will itself, shall be diminished by events actually occurring as matters of fact, but not by an unattested testamentary writing, disconnected from any actual occurrence. (*Langdon* v. *Astor*, 16 N. Y. 26.) The sixth section was, we think, intended to provide simply, that any actual indebtedness found charged concurrently therewith on the testator's books of account, should go in diminution of the payments to the several legatees as a part of their shares respectively.

These views lead to an affirmance of the judgment.

All concur, except TRACY, J., absent.

Judgment affirmed.