## In re HERRICK'S ESTATE.

(Surrogate's Court, Monroe County.  July 17, 1890.)

1. WILLS—CONSTRUCTION—"SURVIVING GRANDCHILDREN."

    A will gave each of testator's grandchildren a legacy of $10,000, to be paid to them severally on attaining the age of 25 years; and, on the death of any of them under that age, the share of such deceased was to be equally divided among the "surviv-

ing grandchildren. " *Held*, that the share of a grandchild, dying under the age of
25, must be distributed among the grandchildren living at the time of testator's
death, to the exclusion of after-born grandchildren.

**2. SAME—GIFTS BY IMPLICATION.**

Testator directed that one-third part of his estate should be held in trust, and the
income paid to his son, who was a widower, for the support of himself and daugh-
ter. In case the daughter survived, one-half of the principal of the trust-estate
was to be paid to her on attaining the age of 21, and the other half was to be equally
divided among testator's heirs at law. If the son died without issue, the entire
trust-estate was to be divided equally among testator's heirs at law. Testator fur-
ther declared that in no event should the principal of the trust fund ever be vested
in the son, but that only the income should be paid him. *Held*, that the remarriage
of the son, the birth of other children to him, and the death of the daughter re-
ferred to in the will under the age of 21, did not by implication entitle the son to
any part of the principal of the trust-estate, as testator had clearly expressed his
intention to the contrary.

**3. SAME—TRUSTS—WHO MAY ATTACK VALIDITY.**

Neither is the son in a position to attack the validity of the trust on the ground
that owing to the death of the daughter under the age of 21, and the birth of chil-
dren to him by the second marriage, no disposition is made by the will as to one-
half of the principal. A valid disposition is made in case the son dies without
issue; and the court will not assume, for the purpose of overthrowing the trust,
that the children by the second marriage, now living, will survive him.

**4. EXECUTORS AND ADMINISTRATORS—PRIVATE ACCOUNTING—COMMISSIONS.**

Within the time usually allowed for the settlement of an estate, the executors of
a will, at a private accounting with the legatees, made a distribution of the estate,
retaining their legal fees for commissions. *Held*, that one of the executors, who
had subsequently been discharged by the surrogate, and whose commissions had
been then judicially allowed, could not be compelled to refund any part of them;
but that the other executors, whose accounts had never been judicially settled, were
chargeable with interest on the commissions received by them in advance of their
allowance by the surrogate.

**5. SAME—PERSONAL LIABILITY.**

After a legatee has accepted bank-stock as part of her legacy, the executors have
no right to buy it back with the funds of the estate, and they are personally liable
for any subsequent depreciation in its value.

**6. SAME—INTEREST ON UNINVESTED FUNDS.**

The executors are not liable for any interest on the funds of the estate during
the time that they remained uninvested for lack of proper securities.

On the judicial settlement of the accounts of the executors, etc., of Lewis
R. Herrick, deceased.

*Perkins & Hayes*, for executors. *Shuart & Sutherland*, for contestant.
*Arthur E. Sutherland*, for special guardian.

ADLINGTON, S. The will of the above-named testator was made in July,
1877, and a codicil thereto in the following August. His death occurred
shortly afterwards, and his will was admitted to probate on the 18th of
September, 1877. The decedent left surviving him his widow, who was
one of the executors of the will, two daughters, both married and having
children; also a son, who was a widower with one child, Emma Dude Her-
rick, then under eight years of age. The grandchildren at his death were
six in number, and all infants. No judicial settlement of the estate was ever
made, although a private accounting and settlement was had among the par-
ties, which will hereafter be more particularly mentioned. The estate con-
sisted wholly of personal property. The present proceeding was begun for
settlement of the estate; objections were filed to the account, and the whole
matter sent to a referee to hear and determine. The matter now comes up
for a hearing on exceptions to the referee's report. Lack of clear and defi-
nite expression of the testator's intention, in regard to the disposition of cer-
tain parts of his estate, makes it necessary to construe the fourth and fifth
subdivisions of the will so far as they relate to the funds in controversy.

The first question of construction grows out of the death of the aforesaid
Emma Dude Herrick, in the year 1884, before having reached the age of 25
years. The language of the will, which it is necessary to consider in this

connection, is as follows: "*Fourth.* I give and bequeath to each of my grandchildren the sum of $10,000, to be paid to them on their severally attaining the age of twenty-five years. I direct that during the minority of any such grandchildren, and until they shall respectively attain the age of twenty-five years, the said sum shall be invested by my executors in bonds and mortgages, or other safe securities, and the interest and proceeds arising therefrom shall be paid semi-annually to the respective mothers of said children, and, in the event of the decease of any mother, the said interest shall be added to the principal fund which, with all accumulations, shall be paid to each of said grandchildren as above mentioned. In the event of the decease of either of said grandchildren prior to attaining the age of twenty-five years, then I direct that the share of such deceased shall be equally divided between the surviving grandchildren, share and share alike. All the grandchildren, as a class, shall take irrespective of relationship as a brother or sister of a deceased child." After the death of the testator, his son Richard married again, and before the death of Emma Dude Herrick had had two children born to him of the second marriage. It is now claimed on behalf of these two infant children of Richard that they are entitled to share equally with the five grandchildren who were alive at the testator's death in Emma's legacy of $10,000, which upon her death was to be distributed to the surviving grandchildren under the foregoing provision of the will. The executors, after Emma's death, distributed her legacy among the grandchildren who were in being at the death of the testator. It seems to me that the executors made the proper disposition of this fund. The sole question is what the testator meant by the words "surviving grandchildren." The fact that he directed a distribution among the grandchildren, as a class, throws no light upon the subject. That is simply a statement of the rule of law which would have been applied to the matter if the direction had been omitted from the will. I think from the circumstances existing when the will was made, and from the language used in it, that the testator intended a distribution of the legacy of any grandchild who should die before attaining the age of 25 years among the grandchildren who survive him; that he could not have anticipated the birth of other grandchildren after his own death. The gift of $10,000 to each grandchild took effect on his death, and it is reasonable to believe that, in the event of the death of any one of them, it was his purpose to distribute the legacy of the one so dying among the other legatees. Such, I think, is the rule of law as established by the decisions. *Moore* v. *Lyons,* 25 Wend. 119; *In re Mahan,* 32 Hun, 73; *Willets* v. *Willets,* 35 Hun, 401; *Webb* v. *Hitchins,* 105 Pa. St. 91; *Martin* v. *Kirby,* 11 Grat. 67; *Davidson* v. *Dallas,* 14 Ves. 576; *Ranelagh* v. *Ranelagh,* 2 Mylne & K. 441–448.

A further question upon the construction of the will is made in regard to the one-third part of the residuary estate set apart by the will for the benefit of the testator's son Richard. It is insisted on the part of the learned counsel for the said Richard, either that the trust impressed upon this one-third part of the residue was intended by the testator to end with the minority of Emma Dude Herrick, and that no valid disposition of the fund itself was made by the will for a long period, or that there was a gift by implication of the said principal fund to Richard P. Herrick at the end of the same period. The provisions of the will which bear upon this question are found in the fifth subdivision of the will, and, omitting immaterial phrases, are as follows, namely: "The remaining one-third part (of my estate) I direct shall be held in trust by my executors, upon trust to invest the same * * * and out of the proceeds arising therefrom to pay my said son Richard the sum of $100 per month for his support and maintenance, and for the support, maintenance, and education of his daughter Emma during her minority." "In the event of my said granddaughter surviving her father, Richard, then she shall receive one-half of his one-third part of the residue of my estate hereinbefore

given and devised to him on her arriving at twenty-one years of age, and the remaining moiety of his said one-third part shall be equally divided between my heirs at law. In no event shall my said son Richard be vested with, receive, or control any part of the principal of the said one-third, but the same shall be held as a trust-estate only, and the income only paid to him. If from sickness, or any other unavoidable necessity, the above-mentioned provision shall not be sufficient for the support and maintenance of my said son Richard and his daughter Emma, then I direct my executors, or a majority of them, to apply such part of the accumulated interest, or of the principal fund constituting such one-third part, as shall, in their judgment, be necessary to supply the deficiency. In the event of the decease of my said son Richard leaving no issue surviving him, then I direct that the said one-third part hereinbefore given and devised in trust for him shall revert to my heirs at law then surviving. * * * This provision shall not be construed as vesting any estate in my said son Richard." The codicil enlarges somewhat the discretion of the executors as to the time and manner of paying to Richard the allowance made for him by will, but does not in any way affect the question here under consideration. I think it will be apparent, upon a careful reading of the foregoing provisions of the will, that there is no gift by implication of the principal fund to Richard P. Herrick. To pass an estate by implication there must be so strong a probability of an intention to give one that the contrary cannot be supposed. Gifts by implication are sustained only upon the principle of carrying into effect the intention of the testator, and, unless it appears upon an examination of the whole will that such must have been the intention, there is no gift by implication. *Post* v. *Hover*, 33 N. Y. 598. The will manifests a strong purpose upon the part of the testator to keep from his son the principal of the fund set apart for his benefit, and declares emphatically that in no event shall he have any part of such principal, but the income only. To hold, therefore, that the trust would cease upon the death, or majority, of Emma Dude Herrick, would be directly at variance with this intention of the testator.

I think, also, that Richard P. Herrick is not in a position to raise the question whether or not, at his death, the will makes provision for legal distribution of the whole of the trust fund. A valid trust in this part of the estate is vested in the executors, by the will, to continue during the life of Richard P. Herrick and to apply the income, and, if necessary, the principal, to his support and maintenance. To the fund created for this purpose was to be added, under certain specified circumstances, the income from the legacy of Emma Dude Herrick. This is a purpose for which a trust of personalty may be lawfully created. *Gilman* v. *Reddington*, 24 N. Y. 12; *Power* v. *Cassidy*, 79 N. Y. 613. No express gift or bequest to the executors was necessary to vest them with the trust-estate. Such a trust would be implied when the duties imposed are active, and render their possession of the legal estate convenient and reasonably necessary. *Robert* v. *Corning*, 89 N. Y. 237; *Ward* v. *Ward*, 16 Abb. N. C. 253. If Richard P. Herrick shall die, leaving no issue surviving him, the will makes a valid disposition of the whole of the trust fund. The fact that he now has children living makes it by no means certain that such will be the case at his death. The courts will not pronounce in advance the legal consequences which would result from events which may never occur. *Ward* v. *Ward, supra.* When an estate is vested under a will in a trustee upon several independent trusts, one of which is valid, while the others may be void, the estate of the trustee will be upheld to the extent necessary to enable him to execute the valid trust. *Van Schuyver* v. *Mulford*, 59 N. Y. 426. Any present distribution of the principal of the trust fund would, therefore, be manifestly improper.

There remain to be considered the exceptions taken by the contestant to the report of the referee. One relates to the commissions of the executors,

and requires a statement of certain transactions between the executors and adult legatees in the year 1877. About November 1st of that year, the three executors stated an account of the assets of the estate, and divided the larger part thereof among the persons entitled to take under the will. The widow and the two daughters received their respective portions, there being no trust created in respect to them. The executors set apart in trust, and took charge of, the trust-estate created for the benefit of the son Richard, and also of the legacies to be held in trust for the six infant grandchildren. The widow, the daughters, and the son executed releases to the executors, acknowledging the receipt, or setting apart, of their several shares in the estate, and stipulating, in substance, that no further account should be required of the executors in regard to the property so distributed. To these instruments were attached schedules purporting to contain a statement of the assets of which the estate consisted. This transaction was probably intended by the parties thereto as a substitute for the ordinary legal procedure of taking an inventory and having an accounting and judicial settlement of the estate in court, and, like most attempts of the sort, has finally resulted in tedious and costly litigation. Although this distribution was made before the time authorized by the statute for payment of legacies, (3 Rev. St., 7th Ed., p. 2300, § 43,) that is now unimportant, and the parties to the transaction are bound thereby. Some time after this distribution, Mr. Crittenden, one of the executors, was paid nearly the full amount of his statutory commissions upon the estate so distributed, and in the year 1881 proceedings were duly had upon his petition in the surrogate's court, which resulted in a decree allowing him to resign as executor, and to be discharged from his trust. Both the account and decree then rendered state that a balance was due him for commissions of $114.71. All persons interested in the estate, including Richard P. Herrick, were cited upon that proceeding. Richard P. Herrick now objects to the payment of these commissions and insists that such payment should be disallowed. His objection is not sustained. Within a year from the issue of the letters, the time usually allowed for the settlement of estates, these executors had done everything necessary to earn their commissions. They had collected in and taken possession of the assets, had paid the testator's debt, had set apart the trust funds, and, with the exception of a few doubtful securities, held for future action, they had distributed the estate to the persons entitled thereto. The only further legal step required to entitle them to payment of their commissions was a formal decree of the surrogate's court upon a judicial settlement of their accounts. So far as Mr. Crittenden is concerned, such decree was made in the proceedings of 1881. As above stated, the account claimed a balance due for commissions, and contained a statement of the amount thereof. If the persons cited did not understand that statement they were entitled to have it made more definite and certain. If they denied Mr. Crittenden's right to any commissions, they could have made that position known by proper objections to the account. The statement gave them notice that commissions had been received, and that more, by way of balance due, was claimed. They did nothing, thus practically conceding the correctness, both of the payment and the claim for balance due, and they cannot now be heard to say that commissions were not due, or were improperly paid to Mr. Crittenden. The payment of commissions, however, to themselves, by the other executors, stands upon a different footing. Although their fees were equitably earned, and in fairness should be allowed by the persons for whose benefit a private, instead of a judicial, accounting and settlement was had, yet there has been no such legal allowance of commissions to them as to entitle them to payment, and each executor must, therefore, be charged with interest on so much of the sum received in advance of allowance as the contestant, Richard, has the right to require him to account for, namely, two-ninths thereof. *Wheelwright* v. *Rhoades*, 28 Hun,

57.  No one else excepts to the findings of the referee on this point, and his report will therefore stand as against all other persons cited.

Another exception is to the allowance by the referee of the loss of $1,666.56, on certain stock of the Bank of Rochester.    At his death the testator owned stock in this bank, the par value of which was $5,000.    On the division of the assets previously mentioned, Mrs. Morse, one of the daughters, accepted this stock as a part of her share at its par value, and it was turned over to her by the executors.    The transaction was, in effect, a sale of the stock to her, and thereafter the executors had no title to or interest in the stock.    Mrs. Morse became its absolute owner, liable to loss by its depreciation, and entitled to any benefit from its advance in value.    Some time after this transfer, the stock ceased to pay dividends, and Mrs. Morse, becoming dissatisfied with the investment, induced the executors to purchase it back.    They paid her therefor $5,000, moneys of the estate.    This was a kindness to her on the part of the executors, but the purchase of these stocks with the funds of the estate was not warranted by the law regulating investments by trustees and executors.    The purchase was, therefore, at their risk, and the stock having been subsequently assessed for $1,666.56, which was paid with moneys of the estate, there was therefore a loss of that amount through the transaction. Richard P. Herrick alone excepts to the referee's allowance of this loss, and his exception is sustained to the extent of his interest in the fund.    The executors must accordingly be charged with two-ninths of the loss upon this stock, and that amount credited to the interest of Richard P. Herrick in the estate.

Another exception relates to the amount of interest with which the executors are charged by the referee.    The contestant insists that a much larger sum must have been earned than has been allowed.    It is evident that to compute interest at the legal rate upon the principal of a trust fund in such a case as this would lead to unfair results.    No fund held for a long time will produce interest at full legal rates.    In the present case, default was made in the payment of certain mortgages, and upon foreclosure it became necessary for the executors to purchase the lands upon which the mortgages were liens in order to protect the interests of the estate.    Some securities were paid up and the moneys received had to be reinvested, and the loss of interest occurred between the time of payment and the finding of proper securities for future investment.

I have carefully read over the testimony taken by the referee and filed with his report, and I cannot discover therefrom that the referee fell into any error in computing the amount of interest with which the executors are chargeable.    I also think that the referee properly allowed the sums paid out for the support, education, and maintenance of Emma Dude Herrick.    It was certainly not the testator's intention that she should become an object of charity; neither her grandmother nor her aunt was under any obligation to provide her with support at their own expense.    The sums paid out by the executors on this account were moderate and reasonable, and should be allowed.    All vouchers to be filed.    These are the only questions that were argued before me.    Numerous other exceptions to the report were filed, but do not seem to require special comment.

The report of the referee will stand confirmed in all respects against all persons not filing exceptions thereto.    The exceptions taken on behalf of the infants are overruled.    The exceptions of Richard P. Herrick are sustained to the extent above indicated, in respect to the payment of commissions to the executors, and in regard to the stock of the Bank of Rochester, but in all other respects are overruled.    A decree may be entered in accordance with the foregoing opinion on two days' notice.