CHANLER v. NEW YORK EL. R. CO. et al.

(Supreme Court, Appellate Division, First Department.     November 11, 1898.)

1. STATUTE OF PERPETUITIES—WILLS—POWER OF SALE—PRECATORY WORDS.
   A will required the executor to collect rents, and distribute among five beneficiaries, and to sell the realty as soon as he could do so to advantage, but the testatrix desired it not to be sold for five years after her death, unless, in the opinion of the executor, the estate would be benefited by earlier sale. *Held* not to be void, as against the statute of perpetuities, prohibiting the suspension of the absolute power of alienation beyond the period of two designated lives in being, since the executor's absolute power to sell was not limited by the precatory words seeking to postpone the sale for five years.

2. SAME—VESTING OF INTEREST—POSTPONEMENT OF PAYMENT.
   A will required the executor to collect and pay rents to legatees, and, after sale of the realty, to distribute the proceeds to them. *Held*, that the legacies vested at once, postponement of the final payment being for convenience in distribution.

3. SAME—SALE OF REALTY—INVESTMENT OF PROCEEDS.
   A will required the executor to collect and pay rents to three legatees, and, after sale of the realty, to invest the proceeds in three separate funds, and pay the income to the legatees until final distribution to them. *Held*, that the title to the legacies vested at the death of testator.

4. EMINENT DOMAIN—EQUITABLE RELIEF—RENTAL DAMAGES.
   In a suit to enjoin the operation of an elevated road, and for rental damages, equity will enforce the right to damages as incident to the equitable relief, if plaintiff is full owner of the damaged property, although at one time he had parted with the legal title and regained it.

5. SAME—RENTAL DAMAGES—EVIDENCE.
   In an action for rental damages by an elevated road to a house from 1877 to 1894, the only testimony as to what rent was received was that of a witness who moved into the house in 1877. She gave the amounts received for certain rooms, but could not tell how much of the building was occupied. She said the rent was "reduced some" when she left, in 1885, and "guessed" it was about a certain sum for certain apartments,

and it was a dollar less as one went up to the top, but she could not tell the time of reduction. *Held* insufficient to sustain an award.

**6. SAME—EXPERT TESTIMONY.**

Expert testimony as to the rental value of a storeroom in a certain year, and as to what should have been realized in that year, is not competent in an action for rental damages by operation of elevated road.

Appeal from special term, New York county.

Bill by Winthrop A. Chanler against the New York Elevated Railroad Company and another. There was a judgment for plaintiff, and defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

William H. Godden, for appellants.

Charles H. Strong, for respondent.

BARRETT, J. This is the usual action for an injunction and damages, the properties affected being Nos. 358, 419, and 428 Third avenue. The first point raised by the defendants is that the plaintiff did not prove a good title to No. 358. Maria Adams died seised of this property in 1881, and her executor conveyed it to the plaintiff in 1885. By the sixth clause of her will the testatrix devised and bequeathed her residuary estate, which included this property, to her executor, in trust to collect the rents and profits until a sale, and distribute them among five individuals named. The will then reads:

"And upon the further trust to sell and dispose of said real estate as soon as he can sell and dispose of the same to advantage and best interest of my estate, but it is my desire that the real estate remain unsold until the expiration of five years after my decease, unless, in the opinion of my executor hereinafter named, my estate will be benefited by an earlier sale; and in trust, further, upon the sale of said real estate to pay one-fifth part of the net proceeds to Mary E. Adams, in case I shall continue to live with her and be taken care of by her until my decease; one-fifth part to Aaron Adams; in trust, further, to invest the other three-fifths of the net proceeds in lawful securities, one of said three-fifths for the benefit of my said son, another of said three-fifths for the benefit of my said daughter, and the other of said three-fifths for the benefit of my said granddaughter. The principal so invested for my son and daughter is to be paid to them in ten equal annual installments, together with the net income thereon or the unpaid installments thereof as often as annually. The principal of the share of my granddaughter is to be paid to her when she is 21. The income thereof at that time is to be paid to her, or her mother for her, as often as annually," etc.

The recipients of the proceeds were the same persons to whom the income was to be paid pending sales. It is said that these provisions illegally suspend the power of alienation.

It is well settled that, where an absolute power of sale is conferred upon an executor, the addition of words suggesting a time for its exercise, or indicating the testator's desire in that regard, do not restrain or limit the action of the executor. Deegan v. Wade, 144 N. Y. 573, 39 N. E. 692; Robert v. Corning, 89 N. Y. 225; Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814. This rule has been applied to words much more peremptory than those in the case at bar. Deegan v. Wade, supra. The fact that an executor may require, in order to make a sale, a period of time not measured by lives in being, does not suspend the power of alienation; and, in such a case, a trust to re-

ceive the rents and profits pending sale for the benefit of beneficiaries is not illegal. Robert v. Corning, supra.

But it is said that the disposition of part, at least, of the proceeds of sale was illegal, and invalidated the power conferred upon the executor. Without considering the latter question, we think it clear that the disposition of the proceeds was valid. The facts as to the first two-fifths are precisely like those in Robert v. Corning, where it was said:

"The postponement of the distribution which was contemplated was for the convenience of the estate, to enable the executors advantageously to convert the property, and the rents, income, and profits which might accrue between the time of the testator's death and the time of distribution were given to the several legatees, to be paid semiannually, in proportion to their interests in the corpus of the fund. These circumstances are regarded as rebutting the presumption against the vesting of legacies, arising from the fact that there is no direct gift, but only a direction to pay over at a future time. The postponement of the payment, where it is made for the convenience of the estate, is consistent with the vesting of the legacies, and the gift of the intermediate income indicates an intention to vest the corpus from which the income is to be derived." 89 N. Y. 240, 241.

Aaron and Mary Adams thus obtained vested interests. We think the same is true of the testator's son, daughter, and granddaughter. In this case, as in the other, the intention to convey a vested interest is shown by the gift of the income. The actual payment is postponed for a longer period, and this postponement is not for convenience of distribution. But three separate funds are created out of the proceeds of sale, which are to be set apart and held for the benefit of these three persons, and of which they are to receive the income until the actual distribution. Where a fund is thus created and devoted to the use of the beneficiary, his title vests at once. Warner v. Durant, 76 N. Y. 133. The rules cited show, in conjunction, that the beneficiaries obtained a vested interest from the date of the death of the testatrix.

It is next said that the defendants were entitled to a jury trial of the question of the rental damage sustained by No. 419 Third avenue prior to March 12, 1891. It appears that on this date, which was subsequent to the bringing of the suit, the plaintiff conveyed the premises to one Simonson, who placed a mortgage thereon, and on the same day reconveyed them to the plaintiff, who has ever since been the owner thereof. It is evident that the transfer was merely nominal, and without consideration, and that the reconveyance was practically simultaneous; but we shall treat the case as though the sale were a bona fide one, and the vendee had been in possession for an appreciable period. It has been held that, where the owner of property conveys it, he loses his right to equitable relief, and the defendant becomes entitled to a jury trial of the question of past damage. Saxton v. Railroad Co., 12 App. Div. 263, 42 N. Y. Supp. 508; Hutton v. Railway Co., 19 App. Div. 243, 46 N. Y. Supp. 169. But it has never been held that the original owner does not regain his right to have the whole question settled by a court of equity when he regains his title to the property. It is said that the right to equitable relief, once lost, can never be regained; but neither reason nor authority is given in

support of such a view.     It has often been held that equity adapts
its relief to the state of facts appearing upon the trial, and we see
no reason for refusing to apply that rule to a case like the present.
It is said that the cause of action which· equity will enforce as an
incident to equitable relief must be one which has been such an inci-
dent throughout.     But this is not so.     In the Hunter Case, 141
N. Y. 281, 36 N. E. 400, the plaintiff was originally a tenant in com-
mon of the land, but before bringing suit shê bought the interests of
her co-tenants, and obtained an assignment of their claims for past
damages.     She was permitted to recover in full in equity.     The court
said:

"When the plaintiff brought her action, she represented in her person every
interest in the property, and if she were found, and should be adjudged, to
be entitled to the equitable relief she demanded, in the exercise of the juris-
diction which it had acquired over the action the court would have the right
to assess the damages down to the time of the trial. * * * If they, as
matter of fact and of law, then belonged to the plaintiff, of what conse-
quence is it that they were not, during all the time for which they were
awarded, hers to recover?"

Plainly, the causes of action for past damages there assigned to
the plaintiff were never an incident to her title, for at the time they
accrued she did not own the whole property, and they did not vest in
her by virtue of her subsequent purchase.     If equity will enforce a
cause of action for rental damage which was never incident to the
right of ownership, certainly it may enforce one which was originally
thus incident, but which ceased to be so temporarily by reason of
the conveyance of the property.     We think the true rule is that,
where the plaintiff: is the full owner, equity will enforce any cause of
action in the premises, legal or equitable, which was vested in him
when he brought his suit.

We have carefully examined the evidence on which the awards are
based.     Most of them are amply sustained.     We do not, however,
find sufficient evidence of rental damage to No. 419.     There is no
evidence in the case from which it can be determined what rent was
received for the property in any year prior to 1894.     The only wit-
ness on the subject is Mrs. Carroll.     She and her husband moved into
the premises in July, 1877, when the building was just completed.
She testifies that tenants followed rapidly, and gives the amounts
received for certain of the rooms.     She makes no attempt, however,
to tell how much of the building was occupied.     She testifies that the
rent was "reduced some" when she left, in 1885; and says:  "I guess
it was about $17 for the apartments adjoining mine,—the front.  It
was as much as that, anyway.     It was one dollar less as you went up
to the top."     She adds that she cannot tell the time of the reduction.
It is quite impossible to ascertain from this evidence how much was
received from the building in 1877 or any subsequent year, or what the
gross reduction was, or when that reduction was made.     It may have
been long after the building of the road, and, in fact, the testimony
seems to show that it was at least two years thereafter.     From the
time Mrs. Carroll left, there is no evidence at all as to the rents re-
ceived, down to 1894.     We are informed what the two stores brought
in 1894 and 1895, and that the whole premises rented for $2,500 in

1897. But there is nothing with which to compare these figures. We know of no case where an award has been allowed to stand upon such proof. The plaintiff must show a loss of rents due to the presence of the road, or a failure to realize as great a sum as he would have but for this cause. But here the evidence does not either show a loss or negative a proper gain. The fundamental basis of the claim is unproven. The defect is not supplied by the opinion of the plaintiff's expert that the rental value of the stores was $900 a year in 1877. This opinion cannot take the place of the actual fact as to what the rent was. This fact was simple, and capable of direct proof, and opinion evidence as to what should have been realized cannot be taken as a substitute.

The evidence of diminution of the fee value of No. 419 is not very satisfactory, but, on the whole, we think it was sufficient to support the award.

The judgment should be modified by deducting the sum of $3,379.42, the amount awarded as rental damage to No. 419 Third avenue, and, as thus modified, affirmed, without costs of this appeal to either party. All concur.