HANNAH TOBIAS, Respondent, v. HENRIETTA KETCHUM and others, Appellants.

The testator not having declared in express terms, that the provisions made by his will for his widow are given in lieu of dower, she is not put to her election, unless the devises of the will are so repugnant to the claim of dower that they cannot stand together.

Where the executors are clothed with full power and authority to rent, lease, repair and insure the estate during any period of time it shall remain unsold and undivided, they are vested with the legal title thereto.

The claim of dower is inconsistent with the provisions of a will which requires the executors to rent, lease, repair, &c., the estate out of which the money is to be raised to pay the bequests to the widow; and, therefore, the widow cannot claim under the provisions of the will without relinquishing her right of dower in such premises.

THIS is an action for the recovery of dower and mesne profits, before admeasurement. The plaintiff is the widow of Silas Tobias. The defendants are his heirs-at-law, his executors, and the occupants, at the time of the commencement of the suit, of the several parcels of land of which dower is sought.

The defense set up is that the deceased husband, by his last will and testament, made provision for plaintiff which he intended to be in lieu of dower, and which, by plaintiff's failure to make her election pursuant to the statute, is a bar to her claim; and secondly, that plaintiff, by an instrument under her hand and seal, accepted such provision and released her claim of dower. The defendants, Sarah Lippitt, Ann Eliza Cohu, Frances Eastwood and Henrietta Ketchum alone answered; the other defendants made default. The clauses of the will and the codicil under which the question as to provision in lieu of dower arises, are in these words:

"First. I give, devise and bequeath unto my beloved wife, Hannah, all the household furniture now in use in my house, in use by myself and her, and all the jewelry of whatever nature and kind, soever it may be, in use by her or myself, and one-third of the net income of all the real estate that to me now belongs, or that to me may at the time of my

decease belong, after all taxes, assessments and interest due thereon is paid. To have and to hold the said net third of the income of said real estate during her natural life. The proportion thereof to commence to be paid to her six months after my decease, and to continue to be paid to her every six months thereafter, till her decease, when the same shall cease and shall then go and be paid to my heirs as hereinafter stated.

"Second. I hereby further give, grant, devise and bequeath all the sub-residue and remainder of my estate, both real and personal, within six months after my decease, if my beloved wife should then have departed this life, but in case my wife should me survive, then I order and direct, that six months after her decease, that all the rest, residue and remainder of my estate, both real and personal, be divided equally among my surviving children, and if any of them be dead at the time when these bequests are to be made, then I order and direct that they or she leaves any child or children, her or them surviving, that such child or children shall receive their mother's share in equal proportions, share and share alike, and I hereby order and direct that my executors hereinafter appointed, give to such of my children's children as may be left them surviving, the full share which their mother, if living, would have been entitled to by the provisions of this will in the manner above provided. And in case any of my said children shall, at the time when these bequests are to be paid, be dead, and no issue left them surviving them, in such event, I own and direct that the share or portion otherwise going to her or them shall lapse and become a part of my residuary estate, and be equally divided among my other children or their heirs as above provided.

"Fourthly. I hereby nominate, constitute, and appoint, as the executors of this, my last will and testament, James G. McAdam, of the city of New York, counselor-at-law, Francis Lippit, of the same place, my son-in-law, Ann Eliza Cohu, my daughter, wife of William Cohu, of the same place, merchant. And I hereby clothe them, the survivor or survivors of them, with full power and authority to carry out all the

provisions of this will, and in case they, the survivor or sur-. vivors of them, deem it necessary or proper to a fair division of said property among the parties entitled thereto by the provisions of this will, that they sell either at public or at private auction, the personal and real estate to me belonging at the time of my decease, or any portion thereof, and give a deed or deeds thereof to the purchaser or purchasers, and to divide the proceeds among the several devisees as hereinbefore provided. The sale or sales of said property not to take place till six months subsequent to the death of myself and wife. And I hereby clothe my said executors, the survivors or survivor of them, with full power and authority to rent, lease, repair and insure any portion of my said estate, during any period of the time the same may remain unsold or undi-- vided as hereinbefore provided.

*A Codicil to the last will and testament of Silas Tobias.*

I, Silas Tobias, of the city of New York, being of sound mind, memory and understanding, and desiring the happiness of my beloved wife, Hannah, my children and heirs, and to promote their peace and comfort after my decease, hereby make, publish and declare this codicil to my last will and testament, and publish and declare the same as a part or portion of my last will and testament, the same as if it was a portion of the original will hereto annexed, in the manner and form following, that is to say: I hereby grant, give and bequeath to my beloved wife, Hannah, in addition to the provision made for her in my last will and testament hereto annexed, and hereby order and direct the executors in my said will named, the survivors or survivor of them, to give to my said wife the free use and enjoyment of the following apartments in the house known as No. 615 Fourth street, in the city of New York, as a residence: First, the back dwelling room in the third story of said house; second, the whole of the first floor of said house; third, the kitchen of said house, with the right to the front basement and yard now in use and enjoyment by herself and me, being the same premi-

ses now occupied and enjoyed by herself and me at the date hereof, to have and to hold the same during the full period of her natural life, and till after her death and burial. And I order and direct, that after her death and burial, that the said premises shall go and belong to my heirs according to the provisions of my last will and testament hereto annexed. And I further order and direct, in further addition to the provision for my said wife in said last will and testament, that a suitable provision in money from my estate be paid to her during the first six months after my decease, till the payments of her provision under the said will shall commence. And I further order and direct, that my said wife may, at her election, have, in lieu of the residence for her hereby provided, have such other or different suitable residence in any other house belonging to me at the time of my decease. And I hereby order and direct that the executors in my said will named be the executors of this codicil to my said will. And I hereby, in all other respects, except as herein provided, confirm and ratify said last will and testament, and revoke all other and former wills by me made, except said will annexed, and this codicil in addition thereto.

        (Signed)         SILAS TOBIAS, [L. S.]

On the trial the plaintiff having put in evidence the will and codicil, and proved the amount of such income realized from the premises up to April, 1862, and that one-third thereof only had been paid to plaintiff, rested her case. The defendant's counsel moved to dismiss the complaint upon the grounds that the provision of the will is in lieu of dower; that the plaintiff having elected, if any election is necessary to accept the same in lieu of dower, cannot maintain this action; that plaintiff cannot unite in this suit a claim against heirs and against other persons. The motion was denied, and defendants excepted.

The defendant's counsel then moved that the plaintiff be directed by the court to elect against which of defendants she means to proceed in this action. This motion was also denied, and defendants excepted.

The defendants' counsel then offered in evidence an agreement, the execution of which was admitted by plaintiff, and which was as follows:

"This agreement made and concluded this 25th day of July, 1856, by and between Hannah, widow of Silas Tobias, late of the city of New York, deceased, of the first part, and James G. McAdam, Joseph F. Lippitt, and Ann Eliza Cohn, executors and executrix of the last will and testament of Silas Tobias, deceased, of the second part, witnesseth: That the said party of the first part, for* and in consideration of the sum of one dollar to her in hand paid—the receipt of which is hereby acknowledged and confessed—covenants and agrees to accept of the said parties of the second part, the sum or amount decreed to be paid unto the party of the first part by the surrogate of the city and county of New York, by a decree or order, bearing date the 25th day of June, 1856, in lieu and full satisfaction of all claims, rights or demands, of whatsoever kind or nature, arising under the will of said Silas Tobias, deceased, for and during the first six months after the decease of the said testator, whether in the nature of legacies given by said will or provisions to be made by the said party of the second part, or of any other nature or kind, or from any source whatever. *And the said party of the first part further covenants and agrees to accept of the said parties of the second part, the sums or allowances given or devised by the said testator by his last will and testament unto the said party of the first part, for and during the said six months after the decease of the said testator, and accruing during the said second six months,* and *furthermore, release all rights, claims or interests in the estate of Silas Tobias, deceased, except as mentioned in the last will and testament of the said deceased.* And in case there should be any diminution in the receipts of said estate at any time hereafter, during the time mentioned in the decree or order of June 25th, and hereinbefore mentioned, so that the amount due under said decree shall be less than the amount hereinbefore mentioned (in the receipt hereto annexed), then a deduction shall be made out of said amount out of the first

moneys which shall become due to said widow after said payment shall be made.

HANNAH TOBIAS,    [L. S.]

JOSEPH F. LIPPETT,    [L. S.]

ANN ELIZA COHU."    [L. S.]

The plaintiff objected to this instrument as evidence for several reasons assigned by him. The court sustained the objection and excluded the paper, and defendants excepted.

The court also ruled that the title of the premises was in the heirs and not in the executors, to which ruling the defendant also excepted.

The court charged the jury, in substance, that the provisions of the will for plaintiff were not to be taken by her in lieu of dower. That plaintiff was entitled to recover interest on the mesne profits, and directed a verdict for plaintiff against the defendants, Henrietta Ketchum, Ann Eliza Cohu, Sarah Lippitt, and Frances Eastwood, the heirs of Silas Tobias, for the undivided one-third part of the premises described in the complaint, for the term of her natural life, as her dower, and also $2,709.10 damages for the detention thereof. The defendants excepted to the several rulings of the charge, separately; a reference was had to take proof as to the defaulting defendants, and judgment for the recovery of one undivided third part of the premises was entered against them on the report of the referee.

The exceptions were ordered to be heard in the first instance at General Term, and judgment was ordered for plaintiff, whereupon proceedings were had upon petition for the admeasurement of the dower, which were subsequently confirmed by the court, and the order of confirmation affirmed at General Term. The case was submitted on printed arguments.

*T. W. Dwight*, for the appellants.

I. The provisions of the will are in lieu of dower: and it is unnecessary to put the wife to her election, or that the will should state directly that the devise or bequest is in lieu of

dower.   If such intention of the testator is clearly indicated, it is sufficient.

The trust given to the executors is inconsistent with the widow's right of dower.   See *Savage* v. *Burnham* (17 N. Y., 562), which is, in all essential particulars, parallel with the present case.

The trust requires the possession of the legal estate by the trustee, in order to its proper execution; it would thence be *inconsistent* for the wife to claim dower, and hold also the legal estate, upon which she could maintain ejectment.   The trustee cannot hold the title, receive the rents and profits, repair and manage the property, if the dower estate of the widow is to be recognized.

II. The widow released her right of dower by the instrument excluded by the court, and the court erred in excluding such instrument.

III. The court also erred in directing a verdict against the heirs of Silas Tobias. (2 R. S., 303, §§ 2, 4; and 304, §§ 10, 13.)

*Charles Tracy*, for the respondent.

I. The widow's right of dower is an inseparable incident of the estate of the husband in lands of which he was seized during coverture, and he cannot defeat such dower estate without the legal consent of the wife.   The wife is not called upon to elect between dower and provisions made for her in the will of her husband, unless so required by the will. .

II. The intention to cut off dower can not be inferred unless the dispositions made by the will are inconsistent with the widow's dower. (9 N. Y., 502, 511, 513; 2 Denio, 430; 7 Cow., 287.)

III. There is nothing in this will inconsistent with the widow's right of dower.

IV. There is no trust created by the will.

DAVIS, J.   The testator not having declared in express terms that the provisions made by his will for his widow are given in lieu of dower, she is not put to her election

unless the devises of the will "be so repugnant to the claim of dower, that they cannot stand together." (*Lewis* v. *Smith,* 9 N. Y., 502; *Bull* v. *Church,* 2 Denio, 430; *Jackson* v. *Churchill,* 7 Cow., 287; *Savage* v. *Burnham,* 17 N. Y., 562.) This rule is a familiar one, and needs no further citation of authority.

In this case the provisions made by the will and codicil for the widow are as follows: 1st. The will gives her all the household furniture and jewelry of every kind in use by her and the testator, or either of them. 2d. One-third of the net income of all the real estate belonging to the testator, after payment of all taxes, assessments and interest due thereon, to commence to be paid to her six months after the testator's decease, and to be paid to her every six months thereafter, during her life. The codicil adds, "a suitable provision in money," "to be paid to her during the first six months, till the payment of her provisions under the will shall commence," and the use during her natural life of the apartments in the house No. 615, Fourth street, New York, as occupied by her and her husband, as a residence at the date of the codicil, with the election to have such other suitable residence in any other house belonging to him at the time of his decease that she might prefer.

After making these provisions the will disposes of all the "rest, residue and remainder of the estate," by directing in substance that it be divided equally among his surviving children and the children of his deceased children, if any there should be, *six months after the death of his widow.*

The will then nominates executors, and clothes them "with full power and authority to carry out all the provisions of the will," and if they deem it necessary or proper to a fair division of the property among the parties entitled thereto, to sell either at public or private sale the personal and real estate, or any portion thereof, and execute deeds thereof, and to divide the proceeds as thereinbefore directed; but no sale to be made till six months subsequent to the death of the testator and his wife. It also clothes the executors, "the survivor or survivors of them, with full power and authority to

rent, lease, repair and insure any portion of the estate during any period of time the same may remain unsold or undivided."

In *Savage* v. *Bunham* (17 N. Y., 561), the testator devised and bequeathed all of his estate, real and personal, to trustees; the real estate upon trust to sell after the death of his wife. The will provided that during her life, the widow should "receive and take to her own use one-third part of the clear yearly rents and profits of the real estate, and that the residue of the clear yearly rents and profits' should be deemed a part of the personal estate, and subject to the dispositions of the will concerning the personal estate."

The entire estate with all its income, except the one-third of the rents and profits of the land, was given (through the trusts) to the testator's children and the children of his daughters. It was held that a claim of dower could not stand consistently with these provisions, and that the widow was put to her election.

Upon the authority of that case, if the will in question creates a trust and vests the entire legal estate in the trustees, the provision made for the widow is inconsistent with the right of dower, and she was bound to elect. In that case her claim of dower, if allowed, would inevitably defeat the scheme of the will, for it would prevent the trustees from holding the legal title of the whole estate, and receiving the entire rents and profits for the purpose of paying taxes, assessments, interest, repairs and insurance, and ascertaining the net income, of which one-third is to be paid to the widow, and the residue ultimately to the other beneficiaries.

The first question, then, is, are the executors, under this will, made trustees of an express trust? The word trust, or trustee, is not used in the will, but that is only a circumstance to be noted in considering the question. "It is by no means necessary that the donee should be expressly directed to hold the property to certain uses or in trust, or as a trustee. * * It is one of the fixed rules of equitable construction, that there is no magic in particular words; and any expressions that show unequivocally the intention of the parties to create

a trust will have that effect. It was said by Lord ELDON, that the word 'trust' not being made use of is a circumstance to be alluded to, but nothing more; and if the whole frame of the will creates a trust, the law is the same though the word trust is not used." (Hill on Trustees, 3d Am. ed., 99; Orig. ed., 65, and cases there cited."

We are in this case to determine the question by the authority conferred and the duties imposed. The executors are clothed "with full power and authority to rent, lease, repair and insure" the estate "during any period of the time it shall remain unsold and undivided." That period is, at all events, to last until six months after the decease of the widow. They are also in general language clothed "with full power and authority to *carry out all the provisions of this will.*" It is apparent that the "net income of all the real estate" is to be ascertained by some person or persons once in six months during the life of the widow, "after all taxes, assessments and interest due thereon are paid." One-third of this net income is to be paid to the widow. By whom is this duty to be performed? It is clearly impracticable for the various tenants of the estate to perform it; neither collectively nor individually have they the means of determining the facts upon which the net income is ascertained, and it would be extremely embarrassing so to frame leases that each tenant should be subject to pay to the widow an amount of his rent that should discharge the proportion his rent bore to the net income of the whole estate, after payment of all taxes, assessments and interest due, on the whole. Collating the power to rent, lease, repair and insure, with the duty that rests somewhere to pay all taxes, assessments and interest, and then to pay to the widow one-third of the net income after such payment, there seems to be no embarrassment in determining where the duty rests. To my mind it is apparent that the scheme of this will requires that the whole income, rents and profits of the real estate shall be received by the executors until the sale and division provided for; and that they are the persons on whom the duty to pay one-third of the net income to the widow is imposed. They are to make

the ultimate division, and consequently to retain for that purpose the income not paid semi-annually to the widow. The rents and profits of all the real estate are given to them for several purposes: 1. To keep down taxes, assessments and interest by paying them; 2. To ascertain the "net income" by deducting from the gross receipts the amount paid for those purposes; 3. To pay one-third of the net income thus ascertained to the widow every six months; 4. To repair and insure the premises out of the residue; and, 5. To retain the balance for division, and finally divide it among the daughters or their children after the decease of the widow. The imposition of these various duties by the will make the acting executors trustees for their performance to the same extent as though declared to be so by the most explicit language. The authority to sell the real estate and execute deeds thereof, as given by the will, standing by itself, would confer nothing but a *power;* but, coupled as it is with the various provisions for leasing, repairing and insuring, with the obligation to *give* to the widow a residence as she may elect, in any of the houses of the testator, it goes far to show that it was the testator's intention to vest the fee of the estate in the trustees. But however that may be, it is well settled that trustees take the legal estate whenever they are clothed with the authority which the foregoing construction of the will gives to the executors in this case.

"If land be devised to three persons and their heirs, in trust, to permit A. to receive the *net* profits for her life for her own use, and after her death to permit B. to receive the net profits for her life, &c., it has been held that the legal estate is in the trustees, for that they are to receive the rents and thereout pay the land tax and other charges on the estate, and hand over the *net* rents only to the tenant for life." (Lewin on Trusts, p. 248; *Baker* v. *Greenwood*, 4 Mees. & Wels., 421; *White* v. *Parker*, 1 Bing. N. C., 573.)

In *White* v. *Parker*, the trustees were to permit the testator's wife and daughters to receive the *clear* rents of three parts and his son the *clear* rent of one part — the trustees to pay all outgoings, to repair and let the premises. It was

held that the legal estate vested in the trustees. In the note to 2 Wm. Saunders, 11, the rule is thus laid down: "Where something is to be done by the trustees which makes it necessary for them to have the legal estate, such as payment of the rents and profits to another's separate use, or of the debts of the testator, or to pay rates and taxes, and keep the premises in repair, the legal estate is vested in them, and the grantee has only a trust estate.

In *Birmingham* v. *Kerivan* (2 Schoales & Lefroy, 444), Lord REDESDALE said that a direction to keep a house in repair applied to the whole house, and could not be considered an obligation on a person claiming dower. When, therefore, the testator authorized his executors to repair, he did not expect that they would control two-thirds of the estate and the widow one-third, but that they would manage the entire property.

The authority to rent and lease, to repair and to insure, by necessary implication, vests the trustees with the legal title. They must not only execute leases, but enforce them, put in tenants and dispossess them, the proper performance of which requires the title of the estate. So to repair, there must be such a right of entry and control in the trustees as gives them complete dominion; and to insure, involves the necessity of ownership, for the policy must be taken in the name of the trustees. But to repair and to insure necessarily involve expenses chargeable upon the rents and profits; and an executor who is authorized to lease, repair and insure by necessary implication, may so lease that rents will come to his hands out of which to pay repairs and insurance, and if a net income is to be paid out of such rents, the executor becomes the party whose duty it is to ascertain and pay it. In *Leggett* v. *Perkins* (2 Comst., 297), the testator constituted his executors trustees of the estate devised to his daughters for life, and authorized them to take charge of, manage and improve the same, and pay over to them, from time to time, the rents, interest and income thereof. It was held to be " very obvious that the legal estate in the premises was necessary to enable the trustees to discharge their

duties," and that the trust was a valid one under the third subdivision of section 55 of the statutes of Uses and Trusts (1 R. S., 729), and that by section 60 of the same statute, the whole estate in law and equity vested in the trustees.

In *Brewster* v. *Stryker* (2 Comst., 19), the testator devised his real estate to his grandchildren, and then provided that the lands should not be sold or alienated, but that his executors should lease or rent the same and pay the rents, issues and profits to his said grandchildren, &c.; it was held that the executors were trustees for the purposes of the will, and took, by implication, the legal estate during the lives of the grandchildren.

These authorities are conceived to be abundant to establish the proposition that the authority to lease, rent, repair, insure, pay taxes, assessments and interest, and pay net income to devisees, carried the legal title to the executors in this case, and created a trust in them valid under the statute.

It follows, therefore, from the decision of this court in *Savage* v. *Burnham,* that a claim of dower is totally inconsistent with the provisions of the will, and the plaintiff was not at liberty to take both the provisions of the will and dower.

In the language of Comstock, J., in the case cited, "During her life she was to have one-third of the clear rent and profits, and the other two-thirds were to go into a general fund for distribution. The entire estate, with all its income, except the one-third, is given, in the clearest possible terms, to the testator's children and the children of his daughters. It is, therefore, impossible for her to receive any part of it, except what is expressly given to her, without subverting the will to that extent."

The circuit judge erred in directing a verdict for plaintiff.

I have considered the question as to the effect of the alleged release of dower. In my opinion, the instrument was not designed for any such purpose as a release of dower, and ought not to be so construed. Its objects are apparent on its face; to wit, to dispose of the vexed question as to her

rights under the provision of the will directing moneys to be paid to her for her suitable support the first six months, and protecting the executors on paying her a sum which might prove larger than was designed by the surrogate's decree, and the instrument ought to be construed accordingly.

I am not embarrassed by the question of parties, nor the form of the judgment. The Code authorizes all persons having conflicting claims to be made parties. (Code, § 118.) The defendants who appeared and answered, admitted the receipt of the rents and profits as alleged in the complaint, putting nothing but the amount in issue. They are the heirs-at-law, and the statute authorizes the verdict for rents and profits against them.

The judgment below should be reversed, and new trial ordered, costs to abide the event.

All the judges concurring, the judgment was reversed and a new trial ordered.