LEWIS H. BAILEY, AS EXECUTOR, ETC., OF BENJAMIN BAILEY, DECEASED, APPELLANT, *v.* JOSEPH H. BAILEY AND OTHERS, RESPONDENTS.

*Trust of real and personal property — void if for three lives — its continuance as regards the real estate must depend on lives beneficially interested therein — otherwise as to personal estate — what trust to receive rents of real estate cannot be sustained as a power — proper disposition of an estate as to which void trusts are created.*

A testator devised his residence to his wife for life. All the rest and residue of his estate, including, on the death of his wife, his aforesaid residence, he gave to his executor in trust to rent the real estate and keep invested the personal property and to divide the income into four parts, and pay over one part to each of four persons named during the lives of two third persons not in any way interested in such residence or income or entitled thereto.

*Held,* that as to his residence the power of alienation was suspended for the period of three lives, and the trust as to it was consequently invalid, and that the same, on the termination of the widow's life estate, descended to the testator's heirs-at-law.

That the fact that the widow's life estate therein might be, as it was, defeated by her refusal to accept the same in lieu of her dower, did not remove the objection to the devise, as it was possible that she might not so refuse; and that it was only necessary in order to defeat the devise to show that it might unlawfully suspend the power of alienation.

After the deaths of the widow and of the two persons upon whose lives the trust was limited, the residue of the estate was given to persons named in the will.

*Held,* that the devise of the remainder in the residence was invalid, and that upon the termination of the widow's life estate it descended to the testator's heirs-at-law.

That, as regarded the real estate embraced in the trust, inasmuch as the continuance of the trust for the payment of the income to the four persons named depended upon the lives of two persons in no way beneficially interested therein, it was not within the provisions of the statute authorizing a trust "to receive the rents and profits of lands and apply them to the use of any person during the life of such person, or for any shorter term," and was void.

That, as regarded the personal property embraced in the trust, the term of the trust did not suspend the absolute ownership of the property for a longer period than that of two lives in being at the death of the testator the term prescribed in cases of trusts of personal property, and that the trust was valid.

That the trust intended to be created over the real estate could not be sustained as a power in trust for the reasons:

That the execution of a trust of this kind requires that the trustee shall be vested with the title to the estate.

That the statute, providing that in certain cases an express trust may be executed as a power, embraces only express trusts " created for any purpose not enumerated in the preceding sections," and that this trust is so enumerated in the preceding sections; the mere fact that it was intended to extend it beyond the period provided for in the statute in no manner changing its purpose or nature.

That it is only when an act by which the property affected by the power may be disposed of or charged, as distinguished from continued management and control, is included in the purpose of a trust that it may be lawfully performed as a power in trust; and an express trust to receive and apply the profits of land is distinct as well as distinguishable from all those acts which may be performed under the authority of a power.

The testator gave, on the expiration of the trusts above named, all his real and personal estate, subject to the life estate of his wife in his residence, to four persons named in his will, and to their heirs and assigns, forever.

*Held*, that the estate so given, other than the residence, was a valid expectant estate, and vested, at the expiration of the lives of the two persons named in the will, in the persons to whom the several fourth parts thereof were given.

That during such two lives the portion of the testator's real estate designed to be included in the trust descended to the testator's heirs-at-law, who became entitled to the rents and profits thereof.

CROSS-APPEALS from a judgment, entered on the report of a referee.

*William F. Cogswell*, for L. H. Bailey and others.

*George Zabriskie*, for Noys and other executors.

*Lucien B. Chase*, for others, respondents.

DANIELS, J.:

The determination of this appeal depends upon the construction and effect to be placed upon and given to the will of Benjamin Bailey, deceased. By its terms he intended to dispose of his entire real and personal estate. He devised his residence, known as No. 344 West Fourteenth street, in the city of New York, to his wife for life. Upon her decease this house and lot was to become a part of the residue of his estate, to be disposed of as he thereafter provided by his will. This residue was intended to include all his property, after the payment of his debts and certain legacies mentioned in the will, and the paragraph of the will by which the subsequent disposition of it was made is in the following language:

*Sixth.* "All the rest, residue and remainder of my real and personal estate, I give, devise and bequeath unto my executor here-

inafter named in trust, nevertheless to and for the uses and purposes following, that is to say: in trust, to let and rent my real estate, and to invest and keep invested my personal property, and to collect the rents, income and interest from my said real and personal property, and after paying all charges and expenses upon or affecting the same, to divide the said rents, interest and income into four parts, and to pay one of said parts to my brother Ward H. Bailey; one of said parts to my sister Rosilia Banks, the wife of Hugh S. Banks; one of said parts to my brother, Lewis H. Bailey, and the other of said parts to my nephew William B. Hobby and my nieces Anna Leila Hobby and Sarah B. Hobby, during the natural life of Thomas Bailey, son of my brother Joseph H. Bailey, and Webster Mabie, son of Moses T. Mabie, of Buffalo, N. Y."

And by force of it this house and lot was in terms rendered subject to the trust specified in this paragraph during the succeeding lives of Joseph H. Bailey and Webster Mabie. If this had been an effectual disposition of the house and lot, then the power of its alienation would be suspended for the period of three lives, which would exceed that prescribed by the statute during which the power of alienating real estate may lawfully be suspended. (2 R. S. [6th ed.], 1101, § 15.)

The fact that the life estate, provided for the testator's widow, might be defeated, as it afterward was, by her refusal to accept it in lieu of her dower, does not remove the objection to these devises, for it was possible that no such objection would be taken by her; and if it should not be, then, by the terms of the will, life estates were provided for in this property that would extend through the natural lives of three different individuals; and that, as the statute has been construed, cannot lawfully be permitted. To render such a disposition of real estate ineffectual, it is only necessary that the power of alienation may possibly be suspended for a longer period than that of three lives in being at the creation of the estate. (*Hone's Ex'rs* v. *Van Shaick*, 20 Wend., 564; *Amory* v. *Lord*, 5 Seld., 403, 415; *Schettler* v. *Smith*, 41 N. Y., 328.) And that possibility was provided for as to this house and lot.

After the decease of the two persons mentioned in the sixth paragraph of the will, then a disposition of the entire estate, both real and personal, was declared to be made, but was not intended

to take effect until the life estate in this property for the testator's widow should be terminated by her decease, and the trust estate should also be brought to a like conclusion by the decease of the two persons upon whose lives it had been limited. This period, for the reason already assigned, was too remote to render this an effectual disposition of the contemplated remainder in this property. And it cannot be relieved from this objection by either of the provisions of the statute relating to the disposition of a remainder when more than two successive estates for life shall be directed, or when the remainder may be dependent upon the lives of more than two persons named as the persons during whose lives the life estate shall continue; for both these sections of the statute contemplate only such life estates as would be legal and valid if it were not for the fact that all of them together would exceed the period allowed for the suspension of the power of alienation of real estate. (2 R. S. [6th ed.], 1102, §§ 17, 19.)

The first two estates, on which the remainder by force of these sections will take effect, are obviously required to be created in such a manner that they will be entitled to be legally sustained. They must be such estates as, under the provisions of the statute, may lawfully be possessed and enjoyed by the life tenants; and where that is their character, the remainder is not allowed to be defeated because still other intervening estates for life may be, in form, created, but which the statute will not allow to take effect in favor of the life tenants. The effect, as well as the language of, the statute in that class of cases is to terminate the suspension at the end of the first two lives, in the same manner as though no succeeding life estates were intended to be created.

In the present case the life estates intended to follow that provided for the widow were not such as were contemplated by these sections of the statute. They were neither of them so directed or created as to be lawful under its provisions; for neither of them include a case where the life estates themselves are void in their inception, as those were which the testator provided for after the death of his widow.

The provisions of the will were ineffective, so far as they related to the final disposition of this house and lot, and it consequently descended to the testator's heirs-at-law.

Under the terms of the trust which the testator endeavored to create by the sixth clause of his will, one-fourth of the rents, interest and income was made payable to his brother, Ward H. Bailey. This beneficiary died before the time of the testator's decease, and as it is agreed by the counsel that the testator consequently died intestate as to this one-fourth, no further or more particular examination of this portion of the case is necessary for its disposition. As to that, it is substantially agreed that the judgment entered upon the referee's report was right. The remaining part of the estate will consequently be alone affected by the further consideration of the case.

By the terms of the trust provided for in the paragraph of the will previously set forth the trust estate was to be continued through the lives of Joseph H. Bailey and Webster Mabie, who were not to be benefited by its existence. No part of the rents, profits, interest or income was payable to either of these individuals, but it was wholly to be divided between other and different persons. For that reason, the proposed trust was not within the provision made for this purpose by the statute. That allowed such a trust to be created to receive and apply the rents and profits of land during the life of the person or persons entitled to receive them or for any shorter term. (2 R. S. [6th ed.], 1106, § 55, sub. 3.)

This was not a trust so limited, for, as it was provided for by the testator, it was not to pay over and apply the rents and profits during the lives of the persons who were to receive them, but during the lives of Joseph H. Bailey and Webster Mabie, who were entirely uninterested in the trust itself or its proceeds. The statute in terms abolished all trusts not authorized by the article framed and enacted on this subject. All others were in effect prohibited. And the trust designed to be created by the testator so far failed, as it included his real estate on account of this restraint. (*Downing* v. *Marshall*, 23 N. Y., 366, 377.)

But as to the personal estate the case is different. This article of the Revised Statutes has been held not to include trusts created in personal property. (*Kane* v. *Gott*, 24 Wend., 641, 651; *Gilman* v. *Reddington*, 24 N. Y., 9, 12, 13.)

The trust in the personal estate was in no manner made dependent upon that intended to include the real estate, but it was distinct

and separate in its character. All the provisions of the will relating to the real estate might be expunged from it, and those remaining would still be sufficient for the creation and execution of the trust in the personal property. And when such a separation can be made, the fact that the provisions relating to the real estate are incapable of being sustained, will not invalidate those relating to the personal estate. (*Post* v. *Hover*, 33 N. Y., 593; *Manice* v. *Manice*, 43 N. Y., 303.)

The only restriction upon the power of the testator to create such a trust in his personal estate, was that it should not suspend the absolute ownership of the property for a longer period than that of two lives in being at the death of the testator, and that it should not transcend the rules prescribed by the statute for the limitation of future estates in lands. (2 R. S. [6th ed.], 1167, §§ 1, 2.)

This trust in the personalty consequently was not required to be limited to the lives of the beneficiaries themselves, but it might be lawfully extended during the lives of any two other persons in being at the decease of the testator. And such was the provision made upon the subject in this will. The trust as to three-fourths of the personal estate was therefore a lawful one and required to be sustained, although that, including the real estate, was inoperative and void for the reasons already mentioned.

It has been urged, however, that the trust intended to be created and extended over the real estate may be sustained and legally executed as a power in trust under the authority of another section of the statute. (2 R. S. [6th ed.], 1109, § 71.) By this section it has been declared that " where an express trust shall be created for any purpose not enumerated in the preceding sections no estate shall vest in the trustees, but the trust, if directing and authorizing the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, subject to the provisions in relation to such powers contained in the third article of this title." But where a trust is proposed to be created to receive the rents and profits of lands and apply them to the use of any person, it has been provided that the whole estate shall vest in the trustee, subject only to the execution of the trust. (2 R. S. [6th ed.], 1109, § 73.) And it has been repeatedly held by the courts that the execution of a trust of this nature, as a matter of fact, requires that the trustee

shall be vested with the title to the estate. In no other manner can it be managed or controlled so as to effectually promote and carry into effect the purposes of the trust. (*Brewster* v. *Striker*, 2 Comst., 19; *Leggett* v. *Perkins*, Id., 297; *Tobias* v. *Ketchum*, 32 N. Y., 319; *Bennett* v. *Garlock*, 79 id., 302.)

This is a distinguishing feature of a trust of this character. The title is essential to its execution, and it is only when the express trust may be such that no estate shall necessarily vest in the trustees, that it can, under section 71, be executed as a power. Other trusts mentioned in the preceding section (55) may be of that nature. The trust to sell lands for the benefit of creditors, or to sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying a charge thereon, may be so construed and therefore be capable of being executed as powers. But a trust requiring such management of the estate as is necessary to obtain its rents and profits is not of this description, for its effectual execution, that requires the title itself to be vested in the trustee. This provision of the statute includes by its terms only the trusts which may be created for a purpose not enumerated in the preceding sections, while a trust to receive the rents and profits and apply them to the use of any person is a trust for one of the purposes mentioned in the preceding fifty-fifth section. The terms made use of in these two sections require to be construed practically in the same manner. By the fifty-fifth section it is enacted that express trusts may be created "for any or either of the following purposes;" and one of these purposes is to receive the rents and profits of land and apply them to the use of any person.

This is one of the enumerated purposes for which a trust may be lawfully created; and it is only when an express trust shall be created for a purpose not enumerated in the preceding sections that it can be executed under section 71 as a power. The circumstance that it was intended in this instance to extend it beyond the period provided for by the statute, in no manner changes the purpose for which the express trust was designed to be created, which was to receive and apply the rents and profits of the land; and, whether it be for the time mentioned in the statute or for a greater period of time, the purpose of such trust is still the same. In each instance it is to receive and apply the rents and profits of the land;

and when it may be created for that purpose, it is not within, and cannot be executed as a power under the force and effect of, the seventy-first section.

This is further manifested very clearly by the latter branch of the section itself, for it is only when the trust may direct or authorize the performance of an act, that it is made valid as a power in trust. This section of the statute, by its language, contemplates a class of cases where an act, as distinguished from continued management and control, is all that may be required to satisfy and execute the trust. Where that may be its nature, and the act itself can be lawfully performed under a power in trust, it may be carried into effect in that manner. But where more than a mere act shall be required, as must be the case in express trusts of this nature, there the trust is not within the terms of this section, and cannot be executed as a power.

The provisions of the article relating to powers are consistent with no other construction of this section, for, as they have authorized powers to be created, the power itself is restricted and limited, in terms, to some act required in the disposition or charge of the property. The broad definition given in the outset is, that it " is an authority to do some act in relation to lands, or the creation of estates therein, or of charges thereon, which the owner granting or reserving such power might himself lawfully perform." (2 R. S. [6th ed.], 1113, § 95.)

And the succeeding provisions are consistent with no other understanding or construction of the statute. By these provisions, a special power has been defined to include the disposition of lands to designated persons, or a class of persons, or where it authorizes the alienation by means of a conveyance, will or charge of an estate, or interest less than a fee. This power is beneficial when no person other than the grantee has an interest in its execution ; while a power is general which authorizes an alienation in fee by means of a conveyance, will or charge to any alienee whatever. By the succeeding sections, the power allowed to be created is designated as one to dispose of lands, as a power of disposition, or a power to make leases, all contemplating and requiring only for their proper execution the performance of some act by the grantee of the power. (2 R. S. [6th ed.], 1114, §§ 98–108.)

The provisions made declaring the cases when a power shall be in trust, have in no manner enlarged the signification of these terms. For a general power in trust has been defined to be one where a person or class of persons, other than the grantee of the power, shall be entitled to the proceeds, or any part of the proceeds, or other benefits to result from the alienation of the land, according to the power. While a special power in trust restricts and limits the benefits of the disposition authorized to be made to a person, or class of persons, other than the grantee of the power, or entitled to the benefit of some charge authorized by the power. (Id., §§ 115, 116, p. 1115.)

The provisions declaring and defining the manner in which powers may be executed, maintain the same view of the purpose and object of the statute. By these provisions it has been declared that a power can only be executed by an instrument in writing sufficient in law to pass the estate or interest of the person executing it, were he the actual owner, and where a power to dispose of lands is confined to a disposition by devise or will, it must be executed in that form.

Where it may be by grant, a proper grant is essential to the execution of the power. In each instance the statute has been framed in such a form as to contemplate the execution of a will, or of some other instrument, as the act by which the power is to be fully carried into effect.

It is a power to dispose of or make a charge upon property requiring one act or successive acts, and whatever the power may be the statute contemplates its complete execution by a will or some other instrument designated for that purpose. (2 R. S., [6th ed.], 1117, §§ 134–140.)

All these provisions are apposite to and consistent with that made by section seventy-one of the article providing for uses and trusts. For they all contemplate the performance of some act by which the property affected by the power may be disposed of or charged. And it is only when such an act has been included in the purpose of a trust, that it may be lawfully performed as a power in trust. An express trust to receive and apply the profits of land is distinct as well as distinguishable from all these acts which may be performed under the authority of a power. For that required

more than an act or succession of acts. It can be carried into effect in no other manner than by continued and constant management and control.

In *Lang* v. *Ropke* (5 Sand., 363), and *Downing* v. *Marshall* (23 N. Y., 366), a broader and more enlarged view was taken of the effect of this section (71) of the article defining uses and trusts. It was incidentally stated that all express trusts which could not be executed under the provisions of the statute defining them, may still be maintained and carried into effect as powers in trust. But what was said in these cases upon this subject was not essential to their decision. This appears from the nature of the controversies considered in the cases, and from the views otherwise expressed. Both these cases were such as to involve in their final disposition no more than the performance of an act which could be well performed under the provisions of the statute defining and providing for the execution of powers. In the second case, DENIO, J., stated his views of this feature of it, in the following manner : " According-ing to the earlier part of the opinion of the chief judge (in which I concur), it is shown that there is no devise of the land to anyone. There is only a power. Although we concede that so much of the power as relates to the rents and profits is void, there still remains a distinct authority to sell the land and pay over the proceeds." And that, in his view, could be well executed under the provisions of the statute relating to powers. (Id., 391, 392.) *Crittenden* v. *Fairchild* (41 N. Y., 289), was certainly no more extended in its effect, for that was simply a power in trust to sell land. In the opinion of MASON, J., it was stated : " Here is no attempt to vest a title in the trustees, but to confer a power of sale upon these executors and distribute the avails to the residuary legatees. It has never been doubted that such a power of sale — conferred upon the executors for the purpose of carrying out the provisions of the will, and where the exercise of the power becomes necessary to carry out the intentions of the testator—is good." (Id., 292.) The case of *Tucker* v. *Tucker* (1 Seld., 408) may be very properly disposed of under the same suggestions. For there was clearly nothing in that case, nor in *Robert* v. *Corning* (23 Hun. 299), or in either of the other authorities which have been brought to the attention of the court, indicating it to be the purpose to extend this section of the statute

so far as to authorize such a trust as this, to be executed as a power. While in *Wood* v. *Wood* (5 Paige, 596), and *Garvey* v. *McDevitt* (72 N. Y.), 556, 562), a different view of the effect of the provisions of the statute was taken by the courts. But if neither of these authorities can be properly regarded as controlling over this subject, inasmuch as no authoritative determination has been made the other way, the terms in which the provisions made by the statute have been expressed require the seventy-first section, so often referred to, to be so construed as to exclude an express trust of the nature of that mentioned in the sixth paragraph of the testator's will. That has been authorized only as an express trust, and when the limitation imposed upon its creation is transcended it must be held to be void and incapable of being executed as a power.

The effect of this conclusion is that the portion of the testator's real estate designed to be appropriated by him for the purpose of this trust was not disposed of by his will, and it consequently descended under the statute to his heirs-at-law, and by virtue of their title so acquired, the rents and profits of it belong to them. They consequently are not subject to the section of the statute declaratory of the class of cases where the rents and profits are made to belong to the persons presumptively entitled to the next eventual estate. (2 R. S. [6th ed.], 1104, § 40.) That applies only when there shall be a suspense of the power of alienation or of the ownership, during the continuance of which the rents and profits shall be undisposed of and no valid direction given for their accumulation. There was no such suspense of the power of alienation as to this interest in the testator's real estate. The heirs to whom it descended became its absolute owners and entitled to take and receive the rents and profits for their own use and benefit.

After the expiration of the two lives upon which the trust was intended to be limited, all the property, both real and personal, was devised to the persons named in the seventh paragraph of the testator's will. This paragraph is in the following form :

*Seventh.* Upon the death of said Thomas Bailey and Webster Mabie, I give, devise and bequeath the whole of my real and personal property, together with the house and lot No. 344 West Fourteenth street, after the death of my said wife, as follows, viz. : One-fourth part thereof to my brother Ward H. Bailey, and to his

heirs and assigns, forever; one-fourth part thereof to my sister Rosilia Banks, and to her heirs and assigns, forever; one-fourth part thereof to my brother Lewis H. Bailey, and to his heirs and assigns, forever, and one-fourth part thereof to my nephew William B. Hobby and my nieces Anna Leila Hobby and Sarah B. Hobby, and to their heirs and assigns, forever.

And it was designed to give the persons named in it the remainder of the testator's estate. As the law stood before the revision of the statutes in 1830, this direction would have constituted a good executory devise, for as that has been defined it did not require any particular estate to precede and support it, but it might be limited to commence in the future without reference to any precedent estate. It was defined to be: "A devise of the future interest in lands or chattels, not to take effect at the testator's death, but limited to arise upon some future contingency." *(Paterson* v. *Ellis,* 11 Wend., 260, 278; 4 Kent [7th ed.], 278.) And it would apparently still be valid as an expectant estate within the definition of such an interest by the statute (2 R. S. [6th ed.], 1101, § 10), for by this section an estate of that nature may be limited to commence at a future day without the intervention of a precedent estate, and that is the condition of the final interest in terms disposed of by this will, as the trust estate must fail. By its failure it will in effect be eliminated from the will, which will then direct the final estate to vest in the persons named in it at the decease of Thomas Bailey and Webster Mabie. And that would not extend the time for its final vesting beyond the lives of those two persons, which the statute expressly permits. It is an expectant estate commencing at a future period and it should not fail because the life estates are incapable of being maintained. For the statute has further provided, that, "no expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate, nor by any destruction of such precedent estate, by disseisin, forfeiture, surrender, merger or otherwise." (2 R. S. [6th ed.], 1103, § 32.)

These are the only points required to be considered in the determination of the appeal, and for the reasons already assigned, and those mentioned in the very lucid and able opinion of the referee, it fol-

lows that the judgment from which the appeal has been taken should be affirmed.

Davis, P. J., and Brady, J., concurred.

Judgment affirmed.