1. WILLS—LIFE ESTATE WITH RIGHT TO USE CORPUS.
    A will, after giving to testator's wife the residuary estate for life, provided that, "if she shall need the personal property ＊ ＊ ＊ for her comfort, maintenance, and support, she may use the whole or any part of it therefor." *Held* not a bequest of the corpus of the personal property, but of only so much as might be necessary for her support.

**2. SAME—DESCRIPTION OF LEGATEES.**

A testator bequeathed all his personal property on the death of his wife, "to the children of my deceased brothers and sisters and the children of my dear wife's deceased sisters, equally, share and share alike, so that each one of our said nephews and nieces shall take an equal share." *Held*, that testator intended the property to go to the children of the brothers and sisters who died before his widow's death.

**3. LIFE TENANTS—LIABILITY FOR INSURANCE.**

Where the executor of a will under which a life tenant is in possession of a building, before the death of the life tenant, pays a premium on a fire insurance policy for a term of years, the estate of the life tenant is chargeable with only that proportion of the premium which would insure the premises up to the time of her death.

**4. WILLS—DEVISE ON CONDITION.**

A devise to a nephew, "provided he shall board, care for, and treat" testator's wife "as a son should treat a mother, caring for her comfort and doing for her as she shall reasonably desire," does not require him to provide a trained nurse, where the wife had funds of her own to pay for one.

Judicial settlement of the estate of Charles W. Wyatt, deceased. Paragraphs 3 and 5 of decedent's will are as follows:

Third. All the rest, residue and remainder of my property and estate, real and personal and mixed, of every nature and kind, and wherever situated, I give, devise, and bequeath to my dear wife, Mary Jane Wyatt, for and during the full term of the natural life of my said wife, to have, hold, use and enjoy the rents, issues, and income thereof, and, if she shall need the personal property of which I may die seised for her comfort, maintenance and support, she may use the whole or any part of it therefor.

Fifth. On the death of my wife, I give, devise, and bequeath all the personal property of which I may die seised, not hereinbefore given and bequeathed, and including such part of my personal property as my dear wife shall not have used up for her necessities, to the children of my deceased brothers and sisters and the children of my dear wife's deceased sisters, equally, share and share alike, so that each one of our said nephews and nieces shall take an equal share. In case any of our said nephews and nieces are dead, leaving child or children, the share which such nephew or niece would have taken, if living, shall go to his or her child or children equally share and share alike. My said nephew Albert C. Wyatt and my nephew John W. Reid are excluded from, and shall not take under, the provisions of this, the fifth clause of my will, as I have specifically made provision for them hereinbefore. Neither shall their children take under this clause, if they or either of them die before my dear wife. And the share which my nephew Charles W. Dewitt would take under this clause of my will shall go to; and I give the same to, his dear children, William E. Dewitt and Anna T. Presler, equally, each one-half of it; and in case of their death, or the death of either of them, then to their children, equally, each branch of children taking the parent's share.

Warner E. L. Ward, for accounting executor.

James G. Graham, Jr., for executors of Mary J. Wyatt, deceased, and others.

Seward U. Round, for Charles W. Dewitt and others.

William M. Terpening and T. W. Tompkins, for other minors.

McELROY, Special Surrogate. There is no connection, except in one particular, between the third and fifth paragraphs of this will. The latter becomes operative only after the complete enjoyment of the former, and our attention will be given to the questions submitted in the order in which the paragraphs appear in the will.

It is claimed by the executors of the estate of Mary J. Wyatt, deceased, that the whole personal estate of the testator, except such as was specifically bequeathed, passed to his wife, Mary J. Wyatt, absolutely, under the third paragraph above, and should be paid to the executors of her estate by this accounting executor, for distribution among the persons entitled thereto under the will of said Mary J. Wyatt. The reason alleged by the counsel for the executors of Mrs. Wyatt's estate for this claim is that there was a power of entire user bequeathed to her in and by the said third paragraph of testator's will, which was equivalent to a bequest of the personal property to her absolutely. It is well settled that where an absolute power of disposal is given to the first legatee a remainder over is void for repugnancy, yet if the right of disposition by the first legatee is conditional the remainder is not repugnant. This testator gives and bequeaths to his wife, for and during the full term of her natural life, the residue of his estate, real and personal, to have, hold, use, and enjoy the rents, issues, and incomes thereof, and if she shall need the personal property of which the testator may die seised, for her comfort, maintenance, and support, she may use the whole or any part of it therefor. In the wording of this will there is no absolute power of disposition of the personal estate given to testator's wife. "If she shall need the personal property of which I may die seised for her comfort, maintenance and support, she may use the whole or any part of it [not absolutely, but] therefor." That sentence expresses to my mind a condition which must first be shown to exist before she is entitled to any part of the corpus of testator's personal property absolutely. If she needs it for her comfort, her maintenance, her support, or either of them, the wife of testator is then authorized to use the whole or any part of testator's personal property therefor. This must certainly limit the use of the corpus of testator's personal property by his wife, if any weight whatever is to be given to the words the testator uses as showing the state of affairs—the condition—that must exist before the right to use his personal property is to be exercised.

The reference counsel for the executors of Mrs. Wyatt makes to the fact that Mary J. Wyatt died within a year after the death of testator, and that she had not at that time, or the time of her decease, reduced the corpus of this personal property to her possession, will not be considered by me as affecting her rights in the least. Suppose the executors of testator's estate had paid the whole fund of personal property to Mrs. Wyatt. I think testator's executors, and the residuary legatees under his will, would have had a right to be heard upon the settlement of her estate; and a claim by them as to the part of his estate which his wife had not used for her comfort, maintenance, and support would have necessarily brought up this third paragraph of testator's will for construction in that proceeding. Nor it is necessary at this time to consider the question raised as to the validity of this trust. If that point is urged, it seems to me that the case reported in 16 N. Y. Supp. 716 (In re Grant's Estate, Sup.) is in point. There the will of testator gave his

wife the right to possess and enjoy the rents and profits of his estate during her life, and that if they were not sufficient for her support a sale might be had, with remainder over after her decease. No trustee was provided for. Held, that the widow was entitled to the possession of the corpus of the estate. * . * * Besides, it appears to me that the provisions of testator's will place his estate within the rule that a trust will be implied in executors when the duties imposed render the possession of the legal estate in the executors reasonably necessary, although it may not be absolutely essential to accomplish the purposes of the will, when such implication would not defeat, but would sustain, the disposition of the will. Tobias v. Ketchum, 32 N. Y. 329; Vernon v. Vernon, 53 N. Y. 357; Morse v. Morse, 85 N. Y. 53; Robert v. Corning, 89 N. Y. 226, 237. I have carefully examined the cases cited by counsel for the executors of Mrs. Wyatt, also the statutes in reference to powers, but am of the opinion that the various provisions in the wills therein construed are not in point or accord with the disposition this testator desired to make of his property. In Campbell v. Beaumont, 91 N. Y. 464, the property of testator was devised to his wife for her sole use and benefit, accompanied by a clause that it was the testator's will and desire that whatever remained at the decease of his wife should be received and enjoyed by her son Charles. Held, that the widow took an absolute title, unaffected by the provision for her son. In Crain v. Wright, 114 N. Y. 307, 21 N. E. 401, the will gave land to the widow, "to have and to hold for her benefit and support." Held, that no intent was discoverable to pass less than a fee. In Hart v. Castle (Sup.) 9 N. Y. Supp. 622, a father gave the residue of his estate to his sons and daughters, their heirs, etc., to be equally divided, and then provided that, if either of the daughters should not leave children at her decease, her share should descend to her brother and sisters, but that said daughters should have "the right to use and manage their shares in such manner as they shall severally choose, and, if the income thereof shall be insufficient for their comfortable support, they may use as much of said share as may be necessary." Held, that an absolute power of alienation of the real estate was devised. In each of the foregoing cases, as well as others cited by counsel in his brief, which I have examined, the wording is so different from testator's will that I fail to see how the rules of construction set forth in those cases can be followed in this case. The case of Van Horne v. Campbell, 100 N. Y. 287, 3 N. E. 316, 771, construes a will drawn before the enactment of the Revised Statutes, and under the provisions of the common law. The rule of construction, as therein set forth, has been changed by the Revised Statutes. 3 Rev. St. (Banks' 7th Ed.) 2178, is as follows:

"Sec. 32. No expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate * * * by disseisin, forfeiture, surrender, merger or otherwise.

"Sec. 33. The last preceding section shall not be construed to prevent an expectant estate from being defeated in any manner, or by any act or means, which the party creating such estate shall, in the creation thereof, have pro-

vided for or authorized; nor shall an expectant estate, thus liable to be defeated, be on that ground adjudged void in its creation."

It seems to me that the estate intended to be created here, after the life estate of testator's widow, was a contingent future remainder, and, under the above provisions of the Revised Statutes, was such an estate as the testator had the right to create, and when the defeating contingency had been rendered impossible, to wit, the death of Mrs. Wyatt without having used any part of testator's personal property for her comfort, maintenance, and support, then the remainder-men, representing the class mentioned in the fifth paragraph above, were entitled to possession. It seems to me that it was clearly the intention of the testator to limit the use of the corpus of his personal property to the actual needs of his wife, and all doubt as to this view not being his intention is overcome by the third clause of testator's codicil, which is as follows:

"I give, devise, and bequeath to my dear wife, Mary Jane Wyatt, the sum of five hundred dollars ($500) absolutely, for herself, her heirs, and assigns, forever, in addition to what I give her by my said will."

This leads us naturally to ask, what had testator given his wife by his will? Can there be any doubt as to what he supposed he had given her before this codicil was made, viz. the rents, issues, and income of all his estate, real and personal, for her natural life, with the right to use the whole or any part of his personal property, if she shall need it, for her comfort, maintenance, and support? If the testator had intended this bequest in his will to have been an absolute gift of all his personal property, what reason could he have had in attempting to give $500 more than his whole personal estate, and from what source would the $500 bequest in his codicil come? While it is true that the widow is the one to determine primarily whether she needs any part of the corpus of this estate for her comfort, maintenance, and support, yet I think that, where a husband leaves his estate in this manner,—practically under the control and enjoyment of his wife, if her necessities require it,— to entitle the wife to the use of any part of the corpus of testator's personal property there must be something substantial in her needs; that the word "comfort" should not be construed to mean "luxury," or the words "maintenance and support" coupled with any possibility of doubt but what the circumstances of the beneficiary are such that a part of the fund or corpus of the estate is needed for that purpose. Such interpretation should only be given as the words, in their ordinary meaning, imply,—the words "comfort, maintenance, and support" meaning, in each particular case, that degree of comfort, maintenance, or support which the testator in his lifetime bestowed upon his wife; and I think it incumbent on the part of the first beneficiary, whoever it may be, to show that the actual condition exists whereby the right to use, and thus lessen, the residuary estate may be exercised.

My conclusions, therefore, are that this testator gave his wife the use and income of his estate, real and personal, for her natural life, with the further right to use any part of his personal property, even to exhaustion, if she should need the same for her comfort, mainte-

nance, and support; that the balance of testator's personal property remaining at the death of his wife (and in this case the whole of it), subject to the expenses of administration and the costs on this accounting, is to be distributed, under a decree to be entered herein in pursuance to the foregoing, to those entitled as residuary legatees under the fifth clause of testator's will, and hereinafter determined.

The portion of the fifth clause of testator's will, upon which a construction is asked, is as follows:

"Fifth. On the death of my wife, I give, devise and bequeath all the personal property of which I may die seised, not hereinbefore given and bequeathed, and including such part of my personal property as my dear wife shall not have used up for her necessities, to the children of my deceased brothers and sisters and the children of my dear wife's deceased sisters, equally, share and share alike, so that each one of our said nephews and nieces shall take an equal share. * * *"

The words, "including such part of my personal property as my dear wife shall not have used up for her necessities," settle beyond a doubt the construction the testator placed upon the third paragraph of his will, and the estate he intended his wife to enjoy thereunder, and strengthen our belief in the construction of the third paragraph as above. It appears by the testimony that at the time testator made his will he was survived by two sisters, five sisters-in-law, and a large number of nephews and nieces, the children of two brothers and three sisters who were deceased. It also appears that there were other nephews and nieces, to wit, the children of testator's two living sisters, and the children of four of the living sisters of testator's wife; that the testator was well acquainted and on intimate terms with his living sisters and the sisters of his wife, and their families, respectively. It is contended on the part of the nephews and nieces of the living sisters of testator's wife that, inasmuch as the testator knew that all his wife's sisters were living, the word "deceased," in the sentence, "the children of my dear wife's deceased sisters," should be stricken out, as carrying a disposition contrary to the intention of testator, or.. else transposed, and the sentence made to read, "the children of my dear [deceased] wife's sisters;" and a like request is made that the word "deceased," in the sentence, "to the children of my deceased brothers and sisters," be stricken out, or the words "and living" interposed, so that the sentence may read, "to the children of my deceased [and living] brothers and sisters." The fact of making a will always raises a strong presumption against any wish of the testator to have his estate, or any part of it, enjoyed by those other than the ones named or included in a class mentioned and described in his will; and while it is the duty of the court to put such construction upon the various clauses of a will as will effectuate the general intent of the testator, and to that end transpose words and phrases, insert or leave out certain words or provisions if necessary, yet this can only be done in aid of the testator's intent, and not to make, in whole or in part, a new will. If the testator had intended to include all his nephews and nieces, and his wife's nephews and nieces, in the class entitled to receive the residue of his personal property at the death of his wife, it seems to me that he would not have used the language he did, but would have prepared a simple sentence,

one that could admit of no question as to his intention, and in substance, at least, as follows: "Upon the death of my wife, I give and bequeath all my personal estate remaining to my nephews and nieces and the nephews and nieces of my wife,—or all our nephews and nieces,—equally, share and share alike." The testimony shows that this testator's will was drawn from a full memoranda of the various paragraphs, and that this part of paragraph fifth was in his own language; and it is fair to assume that he knew the meaning of the word "deceased," and how to use it in a sentence to express his wishes, and that, if he had intended a disposition other than the one expressed, he possessed a sufficient degree of intelligence to have enabled him to do so. Besides, six months thereafter he makes a codicil wherein he ratifies and confirms this fifth paragraph of his will. The sentence in the fifth paragraph above, evidently intending to show the persons and to what extent they severally shall take, is particularly blind, viz. "so that each one of our said nephews and nieces shall take an equal share." I cannot agree with counsel that the word "our" in that sentence should be considered as controlling, and showing that the testator meant the children of his wife's sisters as well as the children of his own brothers and sisters. I think the word "said" is the significant word in that sentence, and refers specifically to the class that had been previously designated,—our said nephews and nieces; that is, "the children of my deceased brothers and sisters, and the children of my dear wife's deceased sisters." The testator could have used the word "our" in that connection, even though there were no children of his wife's sisters; but in my view of his intention, as expressed in this paragraph of his will, the word "our" was used by him to show his intention that the children of his wife's deceased sisters, if any, were to be included at the time a final distribution was to be made.

From a careful examination of all the bequests in testator's will, it must be conceded that it was his intention to pass the enjoyment of his estate, after the death of his wife, to collaterals further removed than his own sisters or his wife's sisters; and I think the general rule which has been declared in many cases—that where a legacy is given to a class of persons, distributable at a time subsequent to the death of the testator, all persons answering the description of the class at the time appointed for the distribution are deemed to be objects of the gift and entitled to a share—applies to this case. Teed v. Morton, 60 N. Y. 506, and cases cited. And this rule applies whether the legacy, if to be enjoyed in the future, is vested or contingent. A testator may devote his gift to a whole class, or restrict it to certain individuals of a class; to persons of a class living at his death, or to such persons and all others who belong to the class at the period of distribution. In this case the period of distribution was upon the death of testator's wife. I am therefore of the opinion that the intention of the testator, as expressed in this fifth paragraph of his will, is as follows: Upon the death of his said wife the residue of his personal property, including such part as his wife had not used for her necessities, was to be divided among the children of his deceased brothers and sisters (except such as are named as not en-

titled to take) and the children of his wife's deceased sisters, if any. As all of testator's wife's sisters were living at the death of testator's wife, none of their children, or the children of the two living sisters of testator, who also survived that event, are entitled to be considered in the class of nephews and nieces representing the objects of testator's bounty.

Two items in the account of the executor of Charles W. Wyatt, deceased, were objected to by counsel for the executors of Mrs. Wyatt's estate. The item of $21.82 for insurance upon the buildings on the real estate of testator, placed about four months before the death of Mrs. Wyatt, and the full premium for three years' charges against her, is objected to, and it seems to me properly so. While it is true that testator's wife had the benefit and use of this real estate for life, yet there is no reason for this life beneficiary paying the premium for this insurance for the full period, unless she had lived to enjoy its protection, and the accounting executor should only charge the life beneficiary with a proportionate part of the amount of premium paid. The item of $25.75 paid by the accounting executor for the services of a trained nurse for testator's wife, and charged by said executor against her, I think, is properly charged. The fourth paragraph of the will is, in part, as follows:

"Fourth. On the death of my dear wife, I give, devise, and bequeath the farm on which I now reside, consisting of about 18 acres of land, with * * *, to my nephew Albert C. Wyatt, provided he shall board, care for, and treat my dear wife as a son should treat a mother, caring for her comfort, and doing for her as she shall reasonably desire. * * *"

It appears from the testimony that the executor of Charles W. Wyatt's estate, learning that Mrs. Wyatt was sick, called, and, although he found that everything was being done for her by this devisee and nephew that he could do, yet the executor aforesaid believed that the experience of a trained nurse was needed; and he accordingly sent one to care for her, and by the services of this trained nurse she was benefited temporarily. While it is true that Mrs. Wyatt might have reasonably desired that this nephew obtain the services of a trained nurse, the testimony shows that it was the act of the executor of her husband's estate, who had funds in his hands belonging to her; and I fail to see, under the terms of testator's will, that it was incumbent on the part of this nephew to furnish a trained nurse, at least unless she had desired it. The request of the testator is that his nephew shall board, care for, and treat his wife "as a son should treat a mother." The testator had no children, and he desired that his wife, after his decease, should have the care, protection, and attention which a son gives a mother; and surely it is not customary for a son to furnish a doctor or trained nurse for a parent in sickness, unless, probably, where the circumstances of the mother are such that she could not pay for such services,—a fact that did not exist in this case. The item of $25.75 will therefore be allowed as charged, and a decree entered in pursuance of the foregoing. Decreed accordingly.